Faith M. MOELLER–PROKOSCH,
Appellant,

v.

Chuck F. PROKOSCH, Appellee.

No. S–9776.

Supreme Court of Alaska.

July 27, 2001.

David A. Golter, Golter & Logsdon, Wasilla, for Appellant.

Mary F. LaFollette, LaFollette Legal Clinic, Anchorage, for Appellee.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

During the course of this divorce, Faith Moeller–Prokosch determined that she wanted to relocate to Florida to be near family and to have access to better job prospects. She appeals an initial custody order that awarded the parties joint legal custody of their son and that conditioned the award of primary physical custody to Faith on her maintenance of the child's residence within a sixty-five mile radius of the Anchorage residence of her ex-husband, Chuck Prokosch. Because the trial court did not conduct the best interests of the child analysis in light of Faith's move to Florida, and because the court does not have the authority to prevent Faith's move to Florida, or to restrict her area of residence, we vacate the child custody award and remand this matter for consideration of custody and the best interests of the child in light of Faith's move to Florida.

## II. FACTS AND PROCEEDINGS

Faith Moeller came to Alaska from Florida in 1989 to help with the Exxon Valdez oil spill cleanup. After her arrival in Alaska, she met Chuck Prokosch, and in 1992 the two were married. Their son, Jeremiah, was born two years later.

The marriage failed, and in January 1999 Faith filed for divorce. In March Faith filed a motion for an interim custody order granting her legal and physical custody of Jeremiah and allowing her to move back to Florida. The court did not grant her motion and instead issued an interim order awarding the parties joint legal custody with primary physical custody awarded to Faith. Her request to relocate was implicitly denied. The parties were divorced in June 1999.

The custody trial was held in December. Faith testified that she wanted to relocate because she had more job opportunities in Florida and because her family lives there. The custody investigator testified that it was her opinion that because of certain self-destructive behaviors of the then-five-year-old Jeremiah and his need for counseling, Jeremiah needed both of his parents, and that

relocating with his mother to Florida would not be in his best interest.

Superior Court Judge Beverly W. Cutler awarded the parties joint legal custody of their son. Faith was awarded primary physical custody. The court set out explicit parameters for the location of the child's residence with Faith: Faith was not allowed to "relocate Jeremiah to a residence that is more [than] sixty-five (65) miles from ... Mr. Prokosch's residence, as long as his residence is known." In the event Chuck moved outside of the sixty-five mile area, the residence restriction would be lifted automatically.

Faith appeals.

## III. STANDARD OF REVIEW

Whether the court applied the correct standard in a custody determination is a question of law we review *de novo*, determining the rule of law in light of precedent, reason, and policy.[1]

## IV. DISCUSSION

*When One Parent Wants to Relocate, the Trial Court Must Determine What Custody Arrangement Is in the Child's Best Interests, Taking into Account the Reasons for the Relocation.*

Faith contends that the superior court erred in its award of custody because it was based on the wrong legal standard. She argues that the award was erroneously based on the court's consideration of "whether the move itself is in the best interests of the child" instead of presuming the move would take place and then determining what custody arrangement would be in the child's best interest if Faith moved to Florida and Chuck remained in Alaska. We agree.

In today's mobile society, it is reasonable to expect that in divorce cases one parent may eventually choose to relocate. Courts making child custody determinations in these cases face a difficult task. Often the definiteness of a parent's move is uncertain or unclear, especially where the move may depend on the court's custody determination itself. A court may be faced with a situation where, before an initial custody determination has been made, a parent seeking custody will condition his or her move plans on obtaining custody. Or the court may be confronted with a custodial parent who would choose not to move if he or she cannot maintain custody. We therefore take this opportunity to clarify the trial court's task in these cases.

Under the standards we have set forth in *House v. House*[2] and *McQuade v. McQuade*, a court making a custody determination in cases where one parent chooses to move away from Alaska must do so by determining what custody arrangement is in the best interests of the child under the criteria stated in AS 25.24.150(c), including determining whether there are legitimate reasons for the move.[3]

In applying this test, the superior court must consider the familiar factors set out by the legislature to determine whether the custody arrangement is in the best interests of the child.[4] As to the legitimacy inquiry, we have said that a proposed move is legitimate if it "was not primarily motivated by a desire to make visitation ... more difficult."[5] The best interests analysis necessarily will include assessing the impact of the parent's move on the child. For example, if the court finds that a move is primarily motivated by the desire to frustrate visitation, the court must take this finding into account in its best-interests analysis. This standard applies in both initial custody determinations and custody determinations made on a motion to modify.[6]

1. See *McQuade v. McQuade*, 901 P.2d 421, 423 n. 3 (Alaska 1995) (citing *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994)).

2. 779 P.2d 1204 (Alaska 1989).

3. *McQuade*, 901 P.2d at 424; *House*, 779 P.2d at 1208.

4. See AS 25.24.150(c); *see also McQuade*, 901 P.2d at 424.

5. *House*, 779 P.2d at 1208.

6. See *McQuade*, 901 P.2d at 423 n. 6.

The court is to assess the best interests in light of all of the relevant factors, including the impact of the move on the child. No Alaska law allows a court to require a custodial parent to forego relocation if custody with that parent remains in the child's best interests and the relocation is not for an illegitimate reason. We conclude that the trial court does not have the authority to place restrictions on a parent's ability to relocate;[7] the custody determination must be made in light of each parent's situation, including relocation.[8]

In the present case, although the trial court made extensive findings with regard to the best interests of Jeremiah, it did not do so in light of the fact that Faith was going to move to Florida. Nor did the court make findings as to whether she had legitimate reasons for the move. In making its conclusions, the trial court appears to have presumed that it had the authority to both prevent the move and restrict the region within which Faith could live with Jeremiah. Because the court does not have such powers, the child custody order must be vacated.

On remand, in making the best interests determination, the court must consider (as it already has) the impact on Jeremiah of the move to Florida.[9] But it must also consider all of the best interest factors in reaching its decision. When it has fully considered all of the relevant factors, the court should make its custody award.

We therefore remand this matter for further proceedings consistent with this opinion and in light of the parties' current circumstances.

## V. CONCLUSION

We REMAND this matter so that the superior court may make its custody determination on the basis of the best interests of the child, including due consideration of the reason for the mother's move to Florida.

---

7. Parents must be cognizant that their plans to relocate may negatively affect maintenance of custody because of the impact of the move on the child.

8. In cases where the certainty of the relocation is unclear, such as this one, it is possible that the trial court might need to make two best-interests determinations—one assuming the parent relocates and one assuming the parent does not.

9. In this case, the trial court relied on two main findings in its decision to award joint legal custody: (1) that "[m]oving Jeremiah to Florida would negatively [a]ffect his relationship with his father, and would be emotionally detrimental to him"; and (2) that Faith's failure to recognize this harm justified denying her sole legal custody because she was being selfish and unwilling to promote an open and loving relationship between Jeremiah and Chuck.