Faith M. MOELLER–PROKOSCH, Appellant,

v.

Chuck F. PROKOSCH, Appellee.

No. S–10486.

Supreme Court of Alaska.

Aug. 19, 2002.

David A. Golter, Golter & Logsdon, P.C., Wasilla, for Appellant.

No brief filed for Appellee.

1. *Moeller–Prokosch v. Prokosch,* 27 P.3d 314 (Alaska 2001) (hereinafter *"Moeller I"*).

2. *Id.* at 316 (alteration in original).

3. *Id.* at 315.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

The main question presented by this case is whether the superior court adequately complied with instructions contained in our prior opinion. For the reasons explained in this opinion we conclude that it did not and remand for further proceedings.

**Prior Proceedings**

This case is before us for the second time. In our first opinion,[1] we described the initial custody decree of the superior court as follows:

> Superior Court Judge Beverly W. Cutler awarded the parties joint legal custody of their son. Faith was awarded primary physical custody. The court set out explicit parameters for the location of the child's residence with Faith: Faith was not allowed to "relocate Jeremiah to a residence that is more [than] sixty-five (65) miles from ... Mr. Prokosch's residence, as long as his residence is known." In the event Chuck moved outside of the sixty-five mile area, the residence restriction would be lifted automatically.[2]

Faith, who lives in Palmer but wished to relocate to Florida, appealed. We vacated the decree and remanded the case to the superior court.[3] We instructed the court to make a determination as to whether it would be in the best interests of the parties' son, Jeremiah, to be in the physical custody of Faith or Chuck, based on an assumption that Faith would move to Florida. This best interests determination was to be made in light of all of the relevant statutory factors set out in AS 25.24.150(c).[4] We also directed the court to determine whether Faith had legitimate reasons for moving to Florida, noting that "a proposed move is legitimate if it 'was not primarily motivated by a desire to make visitation ... more difficult.'"[5]

4. *Id.* at 316.

5. *Id.* (quoting *House v. House,* 779 P.2d 1204, 1208 (Alaska 1989)).

Our decision was published on July 27, 2001. On August 20, 2001, Faith moved, on an expedited basis, for permission to take Jeremiah to Florida so that he could start school there before the Fall 2001 term. She argued that her reasons for moving to Florida were legitimate. Chuck, who lives in Anchorage, opposed the motion and asked the superior court to find that if Faith moved to Florida, it would be in Jeremiah's best interest to remain in Alaska with him.

On August 31 the court held an unscheduled telephonic hearing on Faith's motion. Judge Cutler first observed that "if the court were to consider an award of primary physical custody to Chuck ... the court would have to afford [Faith] a hearing before doing it." Judge Cutler then announced that if she were to rule on the question of physical custody of Jeremiah, she would rule that it would be "detrimental to Jeremiah's best interest for [Faith] to continue to have primary physical custody if she's going to move to Florida." But rather than making a best interests determination assuming Faith moved to Florida, the court proposed to modify the award of joint legal custody in one respect. The court indicated an intention to give Chuck sole legal authority to decide where Jeremiah would go to school. Under this proposal, Faith would keep primary physical custody of Jeremiah as long as she decided to stay within a reasonable distance of Chuck's choice of school.

The court invited further briefing in response to this proposal. In response, Faith argued that the court's intended order was not materially different from the original decree that had been vacated and that it would not comply with the instructions given by this court on remand. Chuck responded, also expressing doubt as to whether the proposed modification of legal custody would satisfy this court's instructions on remand. He suggested that the court transfer physical custody to Chuck in light of Faith's move to Florida.

On October 30, 2001, the court entered an oral order along the lines of the order it proposed on August 31. The order modified the award of joint legal custody by giving Chuck sole authority to decide where Jeremiah should attend school. The order also shifted physical custody to Chuck if Faith chose to live at more than a reasonable distance from Jeremiah's school. The court later entered a written order in accordance with the October 30 order, and indicated that the oral remarks of October 30 would stand as findings of fact and conclusions of law.

## Arguments on Appeal and Summary of Our Decision

A. Faith argues that the superior court did not comply with our remand instructions in the following respects:

1. The modified joint legal custody order had the same effect of preventing her from moving as the prior decree that we vacated;

2. The court, in ordering an automatic shift in physical custody to Chuck if Faith chose to move to Florida, did not,

a. Truly assume that the move would take place,

b. Determine whether her motives for the move were legitimate, c. Consider all relevant statutory factors.

B. Faith also contends that the court should not have contingently changed physical custody without first holding an evidentiary hearing.

Chuck did not file a brief on appeal.

We do not agree with Faith's conclusion under A.1. But we substantially agree with arguments A.2.a. and b. These conclusions moot the remaining arguments. But on remand the court should hold an evidentiary hearing as to developments occurring since the original trial, and should consider all relevant statutory factors.

## Standard of Review

■ " 'Upon remand of a case by this court it becomes the duty of the lower court to obey the mandate and render judgment in conformity.' Whether a lower court on remand has correctly applied our mandate is a question of law which we review de novo." [6]

6. *Williams v. Crawford,* 47 P.3d 1077, 1079 (Alaska 2002) (quoting *Davis v. Hallett,* 630 P.2d 1, 2

## Requirements and Meaning of Our Prior Opinion

Our prior opinion required the superior court, on remand, to assume that Faith would move to Florida, and based on this assumption, determine whether it would be in the best interests of Jeremiah to be in the physical custody of Faith or Chuck, using all of the relevant factors of AS 25.24.150(c).[7] In making this determination, we directed that the court should decide whether Faith's motives for moving to Florida were legitimate.[8] We also suggested, but did not require, that the court make a second best interests determination based on an assumption that Faith would not move to Florida.[9]

Although we directed the trial court to determine whether Faith's motives for moving to Florida were legitimate, we did not specify in detail what the consequences would be if Faith's motives were found to be legitimate. We said that if a move is not legitimately motivated "the court must take this finding into account in its best-interests analysis."[10] We should have added that if a move is found to be for legitimate reasons, the court should not hold the move against the party who proposes to move. The court should not find her to be, because of the move, "selfish and unwilling to promote an open and loving relationship between" the child and the other parent.[11] Legitimately motivated moves are a common feature of "today's mobile society."[12] Such moves would be unfairly deterred if courts were to hold that the moving parent has demonstrated by her desire to move a parental deficiency or weakness.

## Mirroring the Prior Decree

We agree with Faith that the current order in practical effect is nearly the same as the initial decree that we vacated—but worse from Faith's perspective. The initial order awarded Faith primary physical custody and provided that Faith could not relocate Jeremiah more than sixty-five miles away from where Chuck was living. Currently, Faith still has primary physical custody so long as she lives within a "reasonable traveling distance" of Jeremiah's school. Judge Cutler made clear that she expected that Jeremiah's school would be in Palmer, where Faith lived, for the remainder of the 2001–2002 school year. So, at least for the present, no real status change has been effected.

But under our remand instructions a result similar to that of the initial decree is among the reasonably possible outcomes. Therefore, the mere fact that the current order effectively mirrors the initial decree does not necessarily mean that Judge Cutler did not follow our prior opinion.

## Failing To Assume that Faith's Move Would Take Place

More telling is Faith's argument that the trial court did not decide the question of physical custody based on an assumption that Faith would move from Alaska. The court found in its oral remarks of October 30, 2001, that Faith's proposed move to Florida would thwart Chuck's opportunity to have an open, loving and frequent relationship with Jeremiah.[13] The most important factor in the

(Alaska 1981)).

7. *Moeller I*, 27 P.3d at 316 & n. 4.

8. *Id.* at 316.

9. *Id.* at 317 n. 8.

10. *Id.* at 316.

11. *Id.* at 317 n. 9.

12. *Id.* at 316.

13. The court stated:

And so I find that Mr. Prokosch should be given sole legal custody to make the decision on where Jeremiah goes to school because I find if Faith is given that sole legal custody to make that decision she will make that in a way that deliberately thwarts the opportunity of the other parent to have an open, loving, frequent relationship. And while it may not be deliberate and that is her only intended result it is certainly an intended result and it is also defiantly a willfully brought about factual result because she will choose to put the child in the school that is about four or 5,000 miles away from where his father lives, which means that he will not be able—he, the child—will not be able to maintain an open, loving, frequent relationship with the other parent, particularly for a child this age for whom getting on the telephone doesn't constitute an open, loving, frequent relationship, even if he can get on the phone frequently.

court's decision was the court's belief that it was in the best interests of Jeremiah to have frequent contact with both parents.[14] The court made the same point at the August 31, 2001 hearing.[15] When pressed by counsel at the August 31 hearing to proceed based on the assumption that Faith would move, the court was resistant:

> [T]here's no necessity for them to live in two different states. It would be different if there were a necessity and the court said, let's face the fact the parents have to live in two different states, and therefore we just have to decide what's best for this kid since the parents have to live in two different states and nobody can do anything about it.
>
> . . . .
>
> . . . The issue . . .—the statutory criteria is the ability of the parent to promote an open loving relationship. And I guess in a

> I do find that if Mr. Prokosch is given the authority to make that decision, the sole legal custodial decision of where the child is enrolled in school that Mr. Prokosch will enroll this child in school within a reasonable distance of where the other parent presently is located. That Mr. Prokosch will not choose to enroll the child in a school that is willfully chosen as one that is thousands and thousands of miles away from where the other parent presently lives. Thus, Mr. Prokosch is the parent who, between these two parents, who is more capable than the other parent of fostering an open, loving, frequent relationship with the other parent.

14. The court stated:

> And for several more years it appears beyond dispute in this case that the frequent presence of each of these child's parents in his life is very important to his well being. And probably the most important difference in a decision here on who gets legal or physical custody is that factor in the custody statute that we are directed to consider and that is whether the party who has custody is capable of fostering [an] open, loving, frequent, relationship with the other parent.

15. The court stated:

> [B]ut [Jeremiah] is in a situation that is very, very, very important to the development of a child of his age, who's a child of divorce, who's an only child without siblings and so forth, and that is to have an open, loving, frequent contact relationship with each of his two parents so that as he develops into what we hope is a normal, ordinary, responsible adult, he can

sense the court is saying Faith by moving is showing that she lacks that ability. It's not a priority enough for her to make the self-sacrifice to stay where she really doesn't want to stay for reasons that are certainly at least partly legitimate.

■ Thus, the primary reason for the trial court's decision is that Jeremiah's best interests will be served if he continues to have frequent contact with both parents. This is only possible, however, if Faith does not move. The trial court's reasoning is therefore fundamentally inconsistent with the assumption we directed the court to make. If Faith moves to Florida, Jeremiah will lose frequent contact with one of his parents. Under our remand instructions the court was to take the move as a given and determine whether it would be in the best interests of Jeremiah to be in the custody of his father in Alaska or of his mother in Florida.

> healthfully develop in that direction as a result of feeling that both of his parents love, nurture, support him, spend a fair amount of time with him. And that he's not suffering from having a big hole in his life because either his mother is totally out of the picture or his father is totally out of the picture most of the time, and that he suffers from the, you know, absent parent syndrome or whatever it's called in the psychological literature.
>
> Clearly, a child of Jeremiah's age and based on all the description I heard at trial and so forth, it's very important on top of the stress of this divorce to feel that each of his parents does care for him and support him and love him and nurture him and guide him and role model for him, and that this is keeping him more or less psychologically sound notwithstanding the divorce. That if he's in a situation where one of those parents is basically totally absent, that he is likely to deteriorate and to suffer from the syndrome where you feel like you have a big hole in your life because you never get to see one of two people who are very important to you.
>
> In other words, it would be in some ways comparable to the sudden death of a parent. It might not be quite as dramatic and quite as negative a situation as the death of a parent, but there's certainly no reason to put this child who we hope is developing into a normal, ordinary, responsible older child and then a normal, ordinary, responsible adult, no reason to put him at risk of acting out becoming a victim, becoming negative, becoming less healthy than he is because all of a sudden one of his parents is removed from his life. And it does seem to me highly likely that that would happen.

Similarly, the court's reasoning that Chuck's opportunity to have a close relationship with Jeremiah would be hindered by Faith's move to Florida is incomplete given the assumption we directed the court to make. Clearly, if Faith moves, one party or the other is going to be separated from Jeremiah for each school year. Under our remand instructions, this was meant to be the premise on which the court's analysis would be based. Instead, it served as the basis for the court's decision.

We therefore agree with Faith that the reasoning used by the trial court indicates that the court did not decide Jeremiah's physical custody based on the assumption that Faith would move to Florida.

### Failing To Determine Whether Faith's Motives Were Legitimate

In our instructions on remand, we emphasized the need for the trial court to make a determination as to whether Faith had legitimate reasons for moving.[16] But the court addressed this issue only casually and ambiguously. It stated that the need to promote an open, loving, frequent relationship with Chuck is "not a priority enough for [Faith] to make the self-sacrifice to stay where she really doesn't want to stay for reasons that are certainly at least partly legitimate." As we noted, "a proposed move is legitimate if it 'was not primarily motivated by a desire to make visitation ... more difficult.' "[17] The court's remark does not resolve this issue.

Notwithstanding that the court did not resolve the issue of whether Faith's motives for moving to Florida were legitimate, the court found the move to be a negative factor against Faith and in favor of Chuck in making its best interests determination. As we have indicated in today's opinion—but not clearly in our earlier opinion—it is impermissible to count Faith's move to Florida as a negative best-interests factor personal to Faith if her reasons for moving are legiti-

mate—that is, if the move is not primarily motivated by a desire to make visitation more difficult. If, on the other hand, Faith's reasons are not legitimate, "the court must take this finding into account in its best-interests analysis."[18]

### Conclusion

We conclude, therefore, that the trial court did not follow our instructions on remand, both because the court's reasons were inconsistent with a custody determination based on an assumption that Faith would move to Florida, and because the court did not make a finding as to whether Faith's move was motivated by legitimate considerations.

Faith also argues that the court erred by failing to consider all relevant statutory factors in making a best-interests determination and by failing to hold an evidentiary hearing. We need not resolve these questions. On remand, we are confident that the court will address all relevant factors. Further, we believe that there should be a supplemental evidentiary hearing to bring the court up-to-date on factual developments that have occurred since the December 1999 custody trial.

VACATED and REMANDED for further proceedings in accordance with this opinion.[19]

---

16. *Moeller I,* 27 P.3d at 316.

17. *Id.* (quoting *House v. House,* 779 P.2d 1204, 1208 (Alaska 1989)).

18. *Id.*

19. Notwithstanding the provisions of Appellate Rules 507(b) and 512(a), this opinion takes effect upon the date of issuance of this opinion.