NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JILL D. CAMPBELL, f/k/a JILL D. JOHNSON, | ) ) ) | Supreme Court No. S-14410 |
| Appellant, | ) ) | Superior Court No. 3AN-00-09405 CI |
| v. | ) ) ) | MEMORANDUM OPINION AND JUDGMENT[*] |
| JAMES C. HANSON, | ) ) | No. 1425 – July 11, 2012 |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter A. Michalski, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellant. No appearance by Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices, and Eastaugh, Senior Justice.[**]

1.      Jill Campbell, formerly married to James Hanson, appeals a custody modification order that awarded James primary physical custody of their daughter. Jill challenges the superior court's findings and its application of the governing case law.

---

[*]      Entered under Appellate Rule 214.

[**]      Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

2.     Jill Campbell and James Hanson are the parents of one daughter, born in October 2000. When Jill and James divorced in February 2001, Jill lived in Glennallen and James lived in Anchorage. In February 2001 the superior court awarded the parents joint legal custody, awarded Jill primary physical custody, and gave James "frequent and open visitation." In August 2001 the court ordered a visitation schedule by which James picked up the child in Glennallen on Thursdays and returned her to Jill on Sundays, thus giving Jill custody four days a week and James visitation three days a week.

3.     James has a history of alcohol abuse; he received alcohol treatment several times, including hospitalization in 2006.

4.     Jill moved to Anchorage in August 2007, and in October 2007 moved to modify custody. Following a hearing, the superior court in February 2008 reaffirmed its August 2001 order and also ordered: "James Hanson shall not consume alcohol while the minor child is [in] his care, or on the day before the child comes into his care. James Hanson shall not be under the influence of alcohol while the child is in his care."

5.     Jill had become engaged to Matt Campbell by October 2007 and later married him. Matt Campbell sexually assaulted the child four times. It is not clear when the child first told Jill of any assault.[1] According to Jill's unsworn pro se closing argument at the July 7, 2011 custody-modification hearing, the daughter told Jill about the first assault when Jill first moved to Anchorage, but "took it right back." In February 2011 the child again informed Jill that Matt Campbell had sexually assaulted her. Jill

---

[1]     The record does not indicate exactly when the daughter informed Jill of the first assault. James's counsel asserted in closing arguments at the July 7, 2011 custody-modification hearing that the daughter had informed Jill of the assault two and a half years prior.

then contacted the Anchorage Police Department (APD) and Matt Campbell was removed from the house. Jill took the daughter to Alaska CARES, an outpatient clinic that provides sexual abuse evaluations for children. James stated in an affidavit that he first learned of the assault from Alaska's Office of Children's Services in February 2011 and that he obtained counseling for the daughter in Anchorage.

6. In early June 2011 Jill moved to modify visitation because she said she was moving back to Glennallen. Jill's motion proposed that James pick up the daughter in Glennallen on Fridays after school and that Jill pick her up in Anchorage on Sunday evenings. James filed a cross-motion to modify custody, requesting that the child remain with him in Anchorage and that Jill have custodial time with the daughter in a manner comporting with Jill's work schedule.

7. On June 25, 2011, James consumed alcohol while the daughter was in his custody. According to Jill, the child called Jill and was "terrified" because James was drinking and threatening to harm himself. Jill then called APD, and APD officers took James to the hospital. On July 1 Jill filed a motion for expedited consideration of her pending modification motion, and submitted her sworn statement describing the June 25 incident. From July 2-5 James received medical treatment for alcohol withdrawal at the Salvation Army Clitheroe Center. Upon James's discharge, the Clitheroe medical director outlined a plan to address James's alcohol dependency. The plan stated that James was to attend Alcoholics Anonymous five days a week, enroll in a 14-week relapse prevention group, receive monthly injections of Vivitrol to reduce alcohol cravings, and attend monthly follow-up appointments.

8. The superior court held a custody-modification hearing on July 7, 2011 to resolve the parties' cross-motions. Jill represented herself and James was represented by counsel. James testified under oath. Jill does not appear to have been placed under oath. Jill cross-examined James and made a closing statement. The court

then made oral findings in which it determined that it was in the child's best interests to "maintain stability and a relationship" with both parents, and denied Jill's motion to modify custody. The court's July 7 written order provided that if Jill resided in Anchorage at the beginning of the 2011-12 school year, the parents would continue to be bound by the "current" (February 2008) custody order, but that if Jill resided in Glennallen at that time, the child would primarily reside with James beginning with the start of the school term and Jill would have visitation Friday through Sunday. After the court announced the terms of the custody order, Jill orally informed the court that she had already moved to Glennallen and, that due to conflicts with her work schedule, the schedule adopted in the order would prevent her from seeing her daughter. (James had stated in a pre-hearing affidavit that Jill was then employed in Anchorage, was working Thursday, Friday, and Saturday nights, and therefore needed a place to stay in Anchorage on those nights. It is not clear how often Jill drives from her Glennallen home to Anchorage.)

9. Jill, by then represented by counsel, filed a motion for reconsideration, arguing that the court order of "custody-by-default" conflicted with our decision in *Moeller-Prokosch v. Prokosch*[2] and that the court had failed to make necessary findings to determine the best interests of the child. The court denied reconsideration.

10. Jill appeals. First, she challenges the superior court's findings on the stability factor. Second, she argues that the superior court assigned too little weight to the substance abuse factor and too much weight to the stability factor. Third, she cites

---

[2]    27 P.3d 314 (Alaska 2001).

*Moeller-Prokosch*[3] to argue that the superior court's "custody-by-default" order was improper.  Finally, she argues that the court failed to make sufficient best-interests findings.  James did not file an appellee's brief and has not participated in the appeal.

11.     The superior court has broad discretion in child-custody modification determinations.[4]  We will reverse a superior court's best-interests determination only if the court has abused its discretion or the factual findings relied on by the superior court are clearly erroneous.[5]  "A court abuses its discretion if it issues a custody decision without considering all statutorily mandated factors that are relevant to the case at hand."[6]  The findings "need not be extensive," but "must either give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[7]  A factual finding is clearly erroneous if, based on a review of the entire record, we are left with a "definite and firm conviction that a mistake has been made."[8]

---

[3]     *Id.*

[4]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)  (citing *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

[5]     *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001).

[6]     *Dragseth v. Dragseth*, 210 P.3d 1206, 1208 (Alaska 2009) (quoting *Park v. Park*, 986 P.2d 205, 206 (Alaska 1999)); *see also Heather W. v. Rudy R.*, 274 P.3d 478, 485-86 (Alaska  2012) (holding the superior court abused its discretion by failing to consider evidence relating to domestic violence in accordance with AS 25.24.150(g)).

[7]     *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 n.2 (Alaska 1997) (citing *Bird v. Starkey*, 914 P.2d 1246, 1249 n.4 (Alaska 1996)).

[8]     *Cusack v. Cusack*, 202 P.3d 1156, 1159 (Alaska 2009) (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)).

12.     The superior court may modify a custody award if a "change in circumstances requires the modification of the award and the modification is in the best interests of the child."[9] Jill concedes that her move to Glennallen amounted to a change of circumstances within the meaning of the statute. This concession does not undercut her contention on appeal that the court erroneously resolved the competing cross-motions to modify custody. Alaska Statute 25.24.150(c) requires a court to consider the following factors in determining a child's best interests:

> (1)    the physical, emotional, mental, religious, and social needs of the child;
>
> (2)    the capability and desire of each parent to meet these needs;
>
> (3)    the child's preference if the child is of sufficient age and capacity to form a preference;
>
> (4)    the love and affection existing between the child and each parent;
>
> (5)    the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> (6)    the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

---

[9]     AS 25.20.110(a).

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

13. Having reviewed the hearing testimony and the superior court's findings and comments, we conclude that the findings and analysis do not provide us with a "clear indication of the factors which the . . . court considered important in exercising its discretion."[10] Moreover, we conclude that the findings and analysis do not reveal how the court resolved disputes about potentially pertinent statutory factors.

14. The only statutory factor meaningfully addressed in the July 7 written order and oral findings was stability and continuity.[11] But Jill also raised an issue concerning James's substance abuse. There was substantial evidence of his substance abuse, but no meaningful attempt to address how that abuse affected the child's well-being or best interests.[12] We are also concerned that Jill's failure to communicate the child's initial report of abuse to James may reflect on Jill's ability to communicate with James. It may also be that the initial report was not sufficiently definite to require that the father be told. But given the seriousness of such allegations, it seems appropriate to explore further the strength of the child's initial report and whether the mother failed to communicate a credible report to the father, and if so, whether this bears on either the

---

[10] *Dragseth*, 210 P.3d at 1210 (quoting *Smith v. Weekly*, 73 P.3d 1219, 1226 (Alaska 2003)).

[11] AS 25.24.150(c)(5).

[12] AS 25.24.150(c)(8).

mother's ability to communicate with the father about matters important to the child's welfare or on the mother's ability to protect the child. These circumstances suggest that other statutory factors were potentially relevant, including the child's needs, the parents' respective ability to meet those needs, and the willingness of each parent to foster a close relationship with the other parent.[13]

15. We recognize that Jill proceeded pro se at the July 7, 2011 hearing and that the testimony the parties proffered was not elaborate. We are sympathetic to judges who must make appropriate findings of fact even if the parties have offered little or no evidence. We nonetheless conclude, based on the record, that AS 25.24.150(c) required consideration of: (1) any effect James's alcohol abuse had on the daughter's physical and emotional well-being; (2) any effect James's alcohol abuse had on his ability to safely drive the daughter to or from her visits with her mother and within Anchorage; (3) any effect James's alcohol abuse had on his ability to parent the daughter; (4) Jill's ability to change her work schedule; (5) Jill's ability to protect the child in light of the repeated abuse by Matt Campbell; and (6) Jill's ability to communicate with James about issues important to the child's well-being. Given the arguments the parties were making and the evidence of James's substance abuse, these six issues should have been addressed.

16. Because we hold that the findings of fact inadequately address at least one and perhaps more of the statutory factors, we do not reach Jill's arguments that the superior court abused its discretion or made clearly erroneous findings of fact.

17. We remand for findings of fact and conclusions of law on all pertinent statutory factors. On remand the parties may present updated evidence relevant

---

[13] AS 25.24.150(c)(1)-(2), (6).

to the statutory factors. The passage of time may have mooted some potential issues, or given rise to new issues.

18. Jill argues that *Moeller-Prokosch*[14] prohibited the superior court's order of what she describes as "custody-by-default," and that the "order might have been designed to force [Jill] to remain in Anchorage." Jill concedes that our case law does not make clear whether the "full panoply of findings" required under the *Moeller-Prokosch* line of cases is required when a parent relocates in state. We note that most of the cases in which we have ruled that a *Moeller-Prokosch* analysis applies — requiring a symmetrical analysis of the statutory factors "in light of each parent's situation, including relocation"[15] — have involved one parent relocating out of state.[16] We have never required its application when both parents remain in Alaska, their residences are connected by the state road system, they need not travel by air or water, and they live only about three hours driving time apart, as here. We have consequently never held in a case with facts like those now before us that it was an abuse of discretion to fail to apply a *Moeller-Prokosch* analysis. But on the other hand, we have never held in a case factually resembling this one that it was an abuse of discretion to apply a *Moeller-Prokosch* analysis. We do not need to decide here whether the superior court on reconsideration should have engaged in a *Moeller-Prokosch* analysis, because we are remanding for consideration of any unaddressed relevant statutory factors. We therefore express no opinion as to whether a *Moeller-Prokosch* analysis may be material on remand.

---

[14]    27 P.3d 314 (Alaska 2001).

[15]    *Id.* at 317.

[16]    *See, e.g.*, *Rego v. Rego*, 259 P.3d 447, 454 (Alaska 2011).

19.     We therefore VACATE the July 7, 2011 order and REMAND for further proceedings.