*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRENNA M. OUTWATER, f/k/a Brenna M. Ahmasuk, | ) ) ) | Supreme Court No. S-18870 |
| Appellant, | ) ) | Superior Court No. 2NO-16-00255 CI |
| v. | ) ) | O P I N I O N |
| BRANDON D. AHMASUK, | ) ) | No. 7781 – August 1, 2025 |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Nome, Romano D. DiBenedetto, Judge.

Appearances: Herbert M. Pearce, Law Office of Herbert M. Pearce, Anchorage, for Appellant. Phyllis Shepherd, Phyllis Shepherd Law Firm LLC, Anchorage, for Appellee.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

HENDERSON, Justice.

## I. INTRODUCTION

A father and mother, both living in Nome, disputed custody of their three children. The mother sought to modify the parties' prior custody arrangement and move with the children to Palmer, where she and her new husband had just purchased a home. The father opposed. Following a hearing, the superior court awarded primary physical custody and sole legal custody of the children to the father. The mother appeals.

Because the superior court did not conduct the symmetrical analysis required in situations where one parent intends to relocate by a significant distance, and did not consider the children's relational stability in determining physical custody, we remand for the court to conduct the required analyses. And because neither the record nor the court's findings supports the award of sole legal custody rather than joint legal custody, we reverse the superior court's legal custody ruling.

## II.  FACTS AND PROCEEDINGS

### A.  Initial Child Custody Arrangement

Brenna Outwater and Brandon Ahmasuk are the parents of three children. During their marriage, Outwater and Ahmasuk lived in Wasilla for about five years. They moved to Nome around 2010, when one child was three, one child was six months, and one had not yet been born. The parties divorced in November 2016, and Outwater initially had primary custody of the children. In August 2017, both parties agreed to joint legal custody and shared physical custody on a week-on/week-off basis. At that time, both parties lived in Nome.[1]

### B.  Motion To Modify Custody

In February 2023 Outwater filed a motion to modify the then-existing custody order, seeking "full custody" because Ahmasuk "refused to comply with the court order." Outwater claimed that Ahmasuk had recently failed to return their children to her when he was supposed to. She explained that rather than consult with her, Ahmasuk told her "he was keeping them for another week" — something she had not agreed to. Ahmasuk ultimately refused to return the children until a week later.

### C.  Custody Order Modification Trial

A few months later, the superior court held a hearing on Outwater's motion. Although her original motion focused only on the recent incident in which

---

[1]  The record reflects that both parents' families generally live in and around Nome and Kotzebue, but both also have family in the Anchorage and Wasilla areas.

Ahmasuk failed to return the children, she testified regarding additional issues at the hearing.

### 1. Outwater's new marriage and relocation plan

Outwater testified that she had begun seeing Duke McGuffey around 2016, and they married in February 2023. McGuffey had two children from a previous relationship. Per his child custody arrangement, McGuffey had the children during the school year and the mother of McGuffey's children had them during the summer and over the holidays. Outwater testified that her children and McGuffey's children all lived together in the same household, in accordance with their respective custody arrangements. McGuffey explained that the children were all "very close," almost like siblings because "they [did] everything together," including extracurricular activities like sports.

In 2023, Outwater and McGuffey decided to relocate from Nome to Palmer. In response to questioning about the purpose for the move, Outwater testified that she was not relocating to Palmer to make visitation more difficult for Ahmasuk, or to try to take the children away from him or punish him. She explained that housing considerations played a role in their decision, as there was a "severe lack of housing [in Nome], especially affordable housing for a family of [their] size." She testified that she and McGuffey had found a house in Palmer that "was half the cost of what it would be in Nome, and [that] it ha[d] three bathrooms and sufficient space for all the [children]."

Both Outwater and McGuffey explained that they believed relocating would provide the children with increased educational opportunities and greater access to extracurricular activities. The superior court stated several times during the hearing that it would not grant custody based on an argument that "Palmer [has] a better school system than Nome" or that "there are more opportunities" in Palmer.

### 2. Responsibilities for medical care

Outwater testified that she was the parent primarily responsible for meeting the children's medical and dental needs. She explained that Ahmasuk

generally asked her to schedule the children's appointments during the time when she had them because he thought she was trying to interfere with his time by scheduling appointments while the children were with him. When Ahmasuk was asked to clarify whether he had told Outwater that he would be more comfortable if she managed the children's healthcare, he did not recall specifically one way or the other, but said that they "had been working through the differences."

Both parents also testified about how they handled the children's health care expenses. The original custody order required Ahmasuk to pay for health care expenses not covered by insurance. Outwater had paid for braces and retainers for one child, which were not covered by health insurance. Ahmasuk conceded that he had not yet reimbursed Outwater for the cost of the braces, but testified that he was making payments through the hospital's billing department. He also conceded that he had never reimbursed Outwater for costs related to glasses for the same child.

### D. Superior Court's Order Modifying Custody

In July 2023 the superior court issued an order modifying custody. The court found that the initial basis for Outwater's motion, Ahmasuk's withholding of the children, did not amount to a substantial change in circumstances warranting custody modification, but that Outwater's relocation to Palmer did. It determined that the parties would no longer be able to share custody on a week-on/week-off basis given the need for the children to attend school in one location. After considering the statutory best interest factors,[2] the court awarded primary physical custody to Ahmasuk "to allow the children to stay in the community in which they were raised."

---

[2] Alaska Statute 25.24.150(c) directs courts to "determine custody in accordance with the best interests of the child," by considering the following nine factors: (1) the physical, emotional, mental, religious, and social needs of the child; (2) the capability and desire of each parent to meet these needs; (3) the child's preference if the child is of sufficient age and capacity to form a preference; (4) the love and

The court found that the majority of the best interest factors favored both parents equally, but that the factors related to the parties' respective abilities to meet the children's needs and to provide and maintain stability for the children were decisive. The court emphasized that "a parent's desire to contribute to a child's medical needs is a factor to consider" in its analysis. And regarding "[t]he capability and desire of each parent to meet [the children's] needs," the court found "the uncontradicted evidence of Ahmasuk's failure to contribute to [his child's] need for braces, retainer, and glasses" to be troubling.

When considering "[t]he length of time the child[ren] ha[d] lived in a stable, satisfactory environment and the desirability of maintaining continuity," the court discussed only the amount of time each child spent growing up in Nome. The court found that Nome had "been a 'stable, satisfactory environment,' for all three [children] for the vast majority of their lives," and that "[m]aintaining continuity in the children's li[ves] is an important factor in determining their best interests."

Despite the incident during which Ahmasuk withheld custody of the children, the court found that "both parents [were] willing to encourage a relationship with the other parent."

The court explained that while it was "troubled by Ahmasuk's 'forgetting' to contribute to [one child's] need for braces, retainer, and glasses," its greater concern was "taking the children away from the only community they have ever known." The court explained that moving from Nome to Palmer would "separate the children from

affection existing between the child and each parent; (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child . . . ; (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents; (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child; and (9) other factors that the court considers pertinent.

the friends and community supports that take years at times to cultivate and take them to a community . . . for which no evidence has been adduced showing any connections." The court ordered that Ahmasuk have primary custody of the children, that the children live with Ahmasuk during the school year and with Outwater during the summer, and that the parents alternate winter and spring breaks.

The court also awarded Ahmasuk sole legal custody, reasoning that he would "have the children the majority of the time." The court concluded that joint legal custody only works when "the parents' respective decisions are consistent nearly 99% of the time," which the court found was not the case for Outwater and Ahmasuk.

E.     **Motion For Reconsideration**

Outwater filed a motion for reconsideration, arguing that the superior court failed to conduct the proper custody analysis in light of her move to Palmer. Outwater also contended that the court improperly focused solely on geographic stability, rather than also considering relational stability. She further argued that the court's custody order was not justified in light of the parties' testimony, which she believed supported the children spending the school years with her so that they could take advantage of educational and extracurricular opportunities in Palmer, and the summers with Ahmasuk so that they could participate in traditional subsistence activities during that season. Outwater's motion for reconsideration was deemed denied under Alaska Civil Rule 77(k)(4) when the court did not rule on it within 30 days.

Outwater appeals, arguing that the superior court erred in deciding both physical and legal custody.[3]

_____

[3]     During oral argument, Outwater represented that she moved back to Nome, after living away from her children for a year in Palmer, as a result of concerns she had about the children's performance in school. She represented that this was a temporary move conditioned on her children's needs and that she intends to move back to Palmer. Her temporary move back to Nome therefore does not moot this appeal.

## III.   STANDARD OF REVIEW

Trial courts have broad discretion when deciding child custody.[4]   An abuse of discretion exists "if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[5]   "A finding of fact is clearly erroneous only when a review of the entire record leaves us with a definite and firm conviction that the trial court has made a mistake."[6]   Whether the trial court has applied the correct legal standard is a question of law that we review independently.[7]

## IV.   DISCUSSION

A court may modify an award of child custody or visitation if it determines (1) first that a substantial change in circumstances requires the modification and (2) then that the modification is in the best interests of the child.[8]

We have previously held that "[a] parent's anticipated relocation constitutes a substantial change in circumstances sufficient to justify considering a physical custody modification."[9]   Relatedly, we explained the decision-making process that a court must undertake where one parent is making a significant geographical move in the *Moeller-Prokosch* line of cases.[10]   In *Moeller I*, we considered a case in which a mother wanted to move with her son to Florida to be near family and have greater access

---

**4**      *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (citing *Stephanie W. v. Maxwell V.*, 274 P.3d 1185, 1189 (Alaska 2012)).

**5**      *Id.* (quoting *Stephanie W.*, 274 P.3d at 1189).

**6**      *Id.*

**7**      *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011).

**8**      AS 25.20.110(a).

**9**      *Ott v. Runa*, 463 P.3d 180, 185 (Alaska 2020).

**10**      *Moeller-Prokosch v. Prokosch* (*Moeller I*), 27 P.3d 314 (Alaska 2001); *Moeller-Prokosch v. Prokosch* (*Moeller II*), 53 P.3d 152 (Alaska 2002); *Moeller-Prokosch v. Prokosch* (*Moeller III*), 99 P.3d 531 (Alaska 2004).

to job opportunities, while the father remained in Alaska.[11] We held that where such a relocation is anticipated, a superior court may not place restrictions on a parent's ability to relocate, and that the custody determination must be made taking into account each parent's situation, including relocation.[12] We directed that courts making custody determinations where one parent chooses to move away from Alaska must determine whether there are legitimate reasons for the move.[13] "[A] proposed move is legitimate if it 'was not primarily motivated by a desire to make visitation . . . more difficult' " for the other parent.[14] Once the court determines that a proposed move is legitimate, it next considers what custody order will serve the child's best interests, using the statutory factors "with no presumption favoring either parent."[15]

We subsequently emphasized, in *Moeller II*, that if a move is ultimately found to be legitimate, the court cannot then hold the move against the relocating parent, as "[l]egitimately motivated moves are a common feature of 'today's mobile society.' "[16] Finally, in *Moeller III*, we further explained the symmetrical analysis that courts must conduct when analyzing a child's best interests and questions of physical custody in light of a parent's out-of-state relocation. We reasoned that "[p]erforming the best interests analysis based on [a parent's] assumed move requires symmetric consideration of the consequences to" the children if they reside with the non-moving

---

[11]    *Moeller I*, 27 P.3d at 315.

[12]    *Id*. at 317.

[13]    *Id.* at 316.

[14]    *Id.* (second alteration in original) (quoting *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989)).

[15]    *Ott v. Runa*, 463 P.3d 180, 185-86 (Alaska 2020) (quoting *Rego v. Rego*, 259 P.3d 447, 453 (Alaska 2011)); *see also* AS 25.24.150(c).

[16]    *Moeller II*, 53 P.3d 152, 155 (Alaska 2002) (quoting *Moeller I*, 27 P.3d at 316).

parent while the other parent relocates, or if they reside primarily with the moving parent.[17]

While we have acknowledged that a parent's significant relocation constitutes a change in circumstances that may necessitate modifying physical custody,[18] the same need not be true as to legal custody. Although questions of physical and legal custody are both analyzed using the statutory best interest factors, they are two distinct concepts that must be analyzed separately.[19] Regarding the impact of relocation on legal custody, we have observed that "distance is no longer a significant barrier to quick communication or the making of joint decisions about education, health care, and other important child-rearing issues" central to legal custody.[20] And the legislature has expressed a policy favoring joint legal custody, regardless of the physical custody arrangement.[21]

A. **It Was Error To Decide To Modify Physical Custody Without Conducting A Symmetrical Analysis And An Abuse Of Discretion To Fail To Consider Relational Stability.**

1. **The *Moeller-Prokosch* symmetrical analysis framework applies to significant in-state relocations.**

Although Outwater filed her motion to modify custody in response to Ahmasuk withholding the children, this matter ultimately turned on Outwater's relocation to another part of the state, making the parties' previous shared custody schedule no longer feasible. Outwater argues that in conducting its best interests analysis, the court failed to apply the required symmetrical analysis of the consequences to the children of having one parent relocate without the children versus that parent

---

[17] *Moeller III,* 99 P.3d 531, 535-36 (Alaska 2004).

[18] *Judd v. Burns*, 397 P.3d 331, 341 (Alaska 2017).

[19] *Co v. Matson*, 313 P.3d 521, 524 (Alaska 2013).

[20] *Judd*, 397 P.3d at n.35.

[21] *Bell v. Bell*, 794 P.2d 97, 99 (Alaska 1990).

relocating with the children.  Ahmasuk responds that because Outwater's relocation was within the state, not a move outside the state, the court was not required to conduct a symmetrical analysis.

While our precedent surrounding the symmetrical analysis has focused upon situations in which one parent was relocating outside of Alaska, we clarify now that a parent's decision to move a significant distance — whether within the state or outside it — rendering a prior custody arrangement impractical, requires application of the symmetrical analysis.  Outwater's relocation from Nome to Palmer made it virtually impossible for Ahmasuk and Outwater to share custody through a week-on/week-off framework, particularly where the superior court found that the "children need a primary location where they will be attending school."  The distance between Nome and Palmer makes this relocation much like a move out of state, especially as Nome and Palmer are not connected by the road system.  There is nothing unique about an out-of-state move that distinguishes it from an in-state move when the resulting geographical distance between the parents requires a change of physical custody.

But in its decision awarding Ahmasuk primary physical custody, the superior court failed to conduct a symmetrical analysis considering the consequences of Outwater's move with or without the children.  Although the court did consider the ramifications of removing the children from the Nome community in which they were raised, which was certainly an appropriate consideration, the court did not analyze whether there were other interests of the children that would be served by moving with Outwater.  Nor did the court weigh those interests against the children's interests in remaining with Ahmasuk while Outwater moved to a separate community.

Furthermore, it appears the superior court held Outwater's move against her despite our direction in *Moeller II* that superior courts not hold moves against

parents.[22] Outwater and McGuffey testified that they decided to relocate the family for a variety of reasons, including housing costs, the cost of food, and increased opportunities for the children. In response, however, the court seemed to focus solely on Outwater's testimony about the difference between the school systems, explaining that it would not let her remove "the kids from Nome to send them to Harvard, if that [was] the only reason." And in its decision that Ahmasuk would have primary physical custody of the children, the court did not grapple with much of the reasoning offered by Outwater, other than to briefly mention that she "raised issues regarding the children's schooling and the ability to participate in sports and other extracurricular activities that [were] not available to them in Nome."

We must once again emphasize our instruction in *Moeller II* that where a parent's move is not motivated by a desire to interfere with the other parent's custodial time with the children, the superior court's custody decision must not be rooted in approval or disapproval of the parent's decision to move. Rather, the court's decision must be based on which custody situation will best serve the children's interests in light of the move.[23] In discussing the errors in the custody analysis, we do not suggest that the children's interests are better served by living primarily in Nome with Ahmasuk or in Palmer with Outwater; instead, we remand this matter for the superior court to conduct the proper symmetrical analysis.

### 2. It was an abuse of discretion to fail to consider relational stability.

Outwater also argues that in analyzing what custody situation would best serve the children's interests in continuity and stability, the court was required, and failed, to consider both geographic and relational stability. We agree. We have previously recognized that "[c]ontinuity and stability for a child come not only from

---

[22] 53 P.3d 152, 155 (Alaska 2002).

[23] *See id.* at 157.

staying in the same house, or going to the same school."[24] When examining a child's need for continuity and stability, courts must "examine not only the desirability of maintaining geographical continuity, but also the importance of maximizing relational stability."[25] We have reasoned that if the "continuity test centered entirely on the child's geographic stability [it] would always favor placing the child with the non-moving parent."[26] Instead, courts must examine this factor more holistically, considering not only the places and geography involved, but the social and emotional impacts associated with changes in the children's relationships.[27] Geographic stability is only one aspect of this best interest factor.[28]

But here, when the superior court analyzed the stability and continuity factor, it focused only on the importance of geographic stability in the children's lives and failed to address relational stability. The court made no mention in its findings of the "social and emotional factors" that are important to the continuity analysis.[29] It did not address how the children's sense of stability would be impacted by either remaining in Nome without their mother or moving and residing primarily in Palmer without their father.

The superior court also failed to consider the children's longstanding relationships with their step-siblings. Indeed, Outwater and Ahmasuk's children and McGuffey's children had lived together, in accordance with their respective custody arrangements, from 2016 through 2023. They were described as being like siblings.

---

[24]    *Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996).

[25]    *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001).

[26]    *Id.*

[27]    *Saffir v. Wheeler*, 436 P.3d 1009, 1013 (Alaska 2019) (quoting *Veselsky v. Veselsky*, 113 P.3d 629, 635 (Alaska 2005)).

[28]    *See Houston v. Wolpert*, 332 P.3d 1279, 1283-84 (Alaska 2014).

[29]    *Saffir*, 436 P.3d at 1013.

But the court did not acknowledge this relationship in its order, and instead altered physical custody such that the two groups of siblings would rarely see each other. Ahmasuk argues on appeal that the children's relationship with the McGuffey children need not be considered because the two groups of siblings are not biologically related. But important relationships in children's lives need not be biological to be considered when analyzing relational stability.

The superior court further failed to address other significant relationships in the children's lives. For instance, it made no mention of the fact that both Ahmasuk and Outwater have family members living near Palmer. Rather, the court described Palmer as "a community . . . for which no evidence has been adduced showing any connections there." But the record demonstrates just the opposite, as Outwater testified that she has "a whole group of cousins" living between Anchorage and Wasilla, and Ahmasuk testified that he has family in Anchorage, Eagle River, and Wasilla.

In emphasizing relational stability here, we do not mean to suggest that this factor favors one parent or the other, or that consideration of relational stability should override other factors in a best interests analysis. It is ultimately up to the superior court to determine what weight to assign to the various best interest factors.[30] But here, the court failed to even consider relational stability. This was an abuse of discretion.

**B.      It Was Legal Error To Award Sole, Rather Than Joint, Legal Custody To Ahmasuk.**

Outwater also contends that the superior court erred in awarding sole legal custody to Ahmasuk where the law prefers joint legal custody and where the evidence demonstrated that she and Ahmasuk were able to cooperate and communicate with each

---

[30]      *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010) (explaining trial court "has 'considerable discretion in determining the importance of each statutory factor in the context of a specific case' and is not required to weigh the factors equally" (quoting *Barlow v. Thompson*, 221 P.3d 998, 1005 (Alaska 2009))).

other in the children's best interests. We agree with Outwater that the court's legal custody order amounted to legal error and was ultimately unsupported by the record.

First, the superior court's order stated an incorrect legal standard for analyzing legal custody. The court ordered that Ahmasuk should have sole legal custody because "he [would] have the children the majority of the time," and that joint legal custody only works when "the parents' respective decisions are consistent nearly 99% of the time." But we have previously recognized the legislature's determination that "it is in the public interest to encourage parents to share the rights and responsibilities of child rearing" even though shared "physical custody may not be practical or appropriate in all cases."[31] The legal standard cited by the court here, that joint legal custody is reserved for situations where the parents agree "99% of the time," is simply incorrect. That standard does not reflect the legislature's intent, nor our precedent, which instead provides for joint legal custody when the parents can work together in the children's best interests.

Additionally, the fact that children will spend more time in the physical custody of one parent does not, in itself, justify an award of sole legal custody to that parent. Particularly where "distance is no longer a significant barrier to quick communication or the making of joint decisions about education, health care, and other important child-rearing issues,"[32] a family's physical custody schedule does not, in itself, determine the parents' ability to jointly exercise legal custody.

Finally, we observe that the superior court's evaluation of Outwater and Ahmasuk's ability to share joint legal custody is unsupported by the record. The court reasoned that because the custody modification proceedings at issue represented the "third time these parents have come [to] court over the lifetime" of the family, this

---

[31]    *Bell v. Bell*, 794 P.2d 97, 99 (Alaska 1990).

[32]    *Judd v. Burns*, 397 P.3d 331, 341 n.35 (Alaska 2017).

demonstrated an inability of the parties to cooperate and communicate in the children's best interests. In doing so, the court treated this single conflict over custody, arising several years after the parties' prior custody agreement, as demonstrative that they could not share joint legal custody. But treating the existence of a custody disagreement as sufficient evidence of an inability to communicate and cooperate justifying sole legal custody, without further analysis of the parties' behavior, is contrary to the legislative preference for joint legal custody.[33] And here, the court did not identify, nor do we see in the record, any other significant evidence indicating an inability of the parties to share joint legal custody. In fact, the court found that although Outwater and Ahmasuk have disagreed from time to time, "both parents are willing to encourage a relationship with the other parent." This finding tends to suggest that there is not such conflict and hostility between the parents that it would be impossible for them to cooperate and communicate in the children's best interests.

Neither the record nor the court's own findings support its award of sole legal custody to Ahmasuk. The only result supported by the record is maintaining joint legal custody between the parents.

## V.   CONCLUSION

We VACATE and REMAND the award of primary physical custody so that the superior court can conduct the proper symmetrical analysis, including consideration of relational stability. We REVERSE the court's decision regarding legal custody.

---

[33]     *Bell*, 794 P.2d at 99.

- 15 -                                                    **7781**