*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DAISY SAFFIR, | ) |
| Appellant, | ) Supreme Court No. S-17012 |
| | ) |
| v. | ) Superior Court No. 3AN-17-09513 CI |
| | ) |
| | ) O P I N I O N |
| MICHAEL WHEELER, | ) |
| | ) No. 7337 – February 22, 2019 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellant. Michael Wheeler, Pro Se, Anchorage, Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.

## I.    INTRODUCTION

A mother wishes to relocate with her daughter to New York. She sought primary custody, alleging that the father's drinking and busy schedule made him an improper guardian for their two-year-old. The superior court concluded that it was in the child's best interests to remain in Alaska, in her father's custody. The mother appeals, arguing that the superior court erred in its analysis.

Because the superior court did not properly consider the effect of separating the child from her mother, we vacate its custody order and remand for further analysis. However we affirm the court's decision not to order protective measures to ensure the father's sobriety while caring for the child.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Daisy Saffir and Michael Wheeler had a daughter in June 2015. They never married, but began living together during Saffir's pregnancy. Their relationship grew strained over the next two years, largely because of tensions caused by Wheeler's drinking, and they broke up in the summer of 2017. They continued living together with their daughter throughout the proceedings in this case.

Saffir's family lives in New York, and the couple discussed the possibility of moving there with their daughter before they broke up. But these discussions fell apart by the time they separated or shortly thereafter.

### B.    Proceedings

In October 2017 Saffir filed a complaint seeking primary custody of her daughter. She also filed a motion for interim custody requesting permission to move to New York with the child immediately.

The superior court held a hearing on the motion for interim custody on December 20. Saffir testified that she maintained the child's routine and was her primary caretaker, and that Wheeler's drinking habits and work schedule interfered with his ability to parent. Saffir introduced a journal she had made to document Wheeler's drinking, with entries running from September 2016 to December 2017. She also introduced Wheeler's records from Providence Breakthrough Addiction and Behavioral Health Services — a treatment center where Wheeler had been provisionally diagnosed with mild "alcohol use disorder" — and testified that he resumed drinking after

completing outpatient treatment there in June 2016. In response Wheeler testified that he participated in the child's day-to-day care, but that Saffir "micromanaged" him and made it difficult for him to do things like put their daughter to bed. He said the drinking Saffir reported was the result of the tensions in their relationship and disputed the conclusions reached by Providence Breakthrough.

The superior court denied Saffir's motion for interim custody, making oral findings that it had not "heard . . . anything that says any of [Wheeler's] conduct is detrimental to the child." But the court did "order that . . . Wheeler not have any alcohol around the child." It also found that "Saffir has been the primary custodian."

The superior court held final custody hearings one month later, on January 29 and 31, 2018. It had previously clarified that it would also consider the evidence presented at the interim custody hearing when making its final custody decision. The issue of Wheeler's drinking dominated the proceedings. Saffir's stepfather and sister both testified that they had seen Wheeler drink excessively when he visited them in New York. They further testified that Saffir actively tried to involve Wheeler in the child's life. Saffir also offered the testimony of a counselor who assessed Wheeler for Providence Breakthrough and expert testimony from Vivian Patton, a counselor who treats "mental health and substance use issues," but who did not interview Wheeler and based her opinion solely on his medical records and the litigation materials. Both said that Wheeler met the criteria for alcohol use disorder. Finally Saffir herself testified at length about Wheeler's schedule and drinking, and said that she had found him intoxicated while caring for their daughter on three separate occasions. She also explained how she facilitated Wheeler's involvement with their daughter.

For his part Wheeler testified that his work schedule was flexible enough to allow him to care for the child and that he had been an active part of her life since birth. He disputed Saffir's testimony about his alcohol use and claimed that he had been

sober for "three or four" months prior to the trial. He introduced data from Soberlink —
a service that uses a portable breathalyzer to monitor alcohol use at scheduled times —
to demonstrate his sobriety. Finally he sought to discredit Saffir's journal with the
testimony of three friends.

At the end of the hearing, the superior court made several oral findings. It
concluded that "Saffir has been controlling" and that this is "interfering with . . .
Wheeler's ability to parent." It also found that the testimony of Saffir's relatives about
Wheeler's alcohol use was credible, but found Wheeler's testimony credible as well. In
contrast the court did not "find [Saffir's journal] very reliable," and expressed a
skepticism that it was created for litigation purposes. Finally the court stated that "the
drinking has been mitigated to an extent by the steps that . . . Wheeler has taken,"
including using Soberlink and enrolling in Providence Breakthrough.

The superior court issued its final custody order in February 2018. It
concluded that "it is in the child's best interest to remain in Alaska until kindergarten,"
but that "[w]hen [she] reaches kindergarten age the court will consider this a substantial
change of circumstance and the parties can readdress custody again." In reaching this
decision, the court first addressed Saffir's relocation to New York and the impact such
a move would have on the child. It found that Saffir had a legitimate reason to move to
New York, but that "[c]onsistent contact with [Wheeler] will be disrupted if [the child]
is allowed to relocate." While the court recognized that the child would benefit from the
extended family she has in New York, it reasoned that Saffir's actions while in Alaska
"indicate[] that she is overly protective of [the child] to such an extent it interferes with
[Wheeler's] ability to parent" and that "[t]his control will be exacerbated in New York."
The superior court found that Saffir had been the child's "primary day to day caregiver,"
but that this was at least in part because she had prevented Wheeler from "handl[ing] day
to day issues."

The court then proceeded to consider the child's best interests, discussing each of the factors listed in AS 25.24.150(c).[1]  It found that (1) the child had no special

---

[1]     This section provides that:

The court shall determine custody in accordance with the best interests of the child under AS 25.20.060-25.20.130. In determining the best interests of the child the court shall consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or

(continued...)

-5-                                                          7337

needs; (2) that both parents had the ability and desire to meet her needs; (3) that the child was not old enough to have a preference between her parents; (4) that love and affection existed between the child and each parent; (5) that "maintaining stability and continuity in Alaska at this time is important for the child" because Saffir's tight control over the child's schedule would "thwart [Wheeler's] ability to parent when he has custody"; (6) that Saffir's "actions demonstrate that she will not allow an open and loving relationship between" Wheeler and the child and that this would "be exacerbated if [the child] is allowed to relocate to New York"; (7) that there was no evidence of child neglect or abuse; and (8) that Wheeler had "taken steps" to address his drinking problem and that his "alcohol issues" did not "affect the well[-]being of the child."

Based on these findings, the superior court awarded primary physical custody to Wheeler if Saffir moves to New York. In that scenario Saffir was awarded custody of the child for one week each month, with the location of her custody alternating between New York and Alaska. In the event that Saffir stays in Alaska, the court ordered a 2-2-3 custody schedule. The court did not impose any conditions requiring Wheeler to be sober or demonstrate sobriety while caring for the child. Saffir appeals.

## III.   DISCUSSION

Saffir appeals all but two of the superior court's best-interests determinations, as well as the weight given to them. Saffir also argues that the superior court abused its discretion by not ordering protective measures to ensure Wheeler's sobriety while with the child. Because we agree that the court's analysis of the fifth best-

---

[1]     (...continued)
other members of the household directly affects the emotional
or physical well-being of the child;

(9) other factors that the court considers pertinent.

interests factor[2] did not conform with our precedent — namely that it did not include a symmetric analysis of the impact Saffir's move would have on the child if the child remained in Alaska or if she moved with Saffir to New York — we remand to the superior court for further analysis. We however affirm the superior court's decision not to order protective measures.

### A. The Failure To Engage In Proper Symmetrical Analysis Was Legal Error.

#### 1. The *Moeller-Prokosch* framework

Where, as here, a custody dispute involves one parent's plan to leave the state, superior courts must use a two-step process to determine the best interests of the affected child.[3] The superior court must first "determine whether the planned move is 'legitimate.' "[4] If the superior court finds that the move is legitimate, it "must assume that the move will take place and then consider the . . . statutory factors to determine the custody arrangement that serves the best interests of the child[]."[5] "Performing the best interests analysis based on [a parent's] assumed move requires symmetric consideration of the consequences to [the child] both if [the parent] leaves with [the child] and if [the

---

[2]     "[T]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." AS 25.24.150(c)(5).

[3]     *Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316 (Alaska 2001) (*Moeller-Prokosch I*).

[4]     *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Moeller-Prokosch I*, 27 P.3d at 316). "A move is legitimate if it is not primarily motivated by a desire to make visitation more difficult." *Rego v. Rego*, 259 P.3d 447, 453 (Alaska 2011).

[5]     *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005) (citing *Moeller-Prokosch I*, 27 P.3d at 316) (footnote omitted).

parent] leaves without [the child]."[6] This analytical framework "ensures that courts weigh costs and benefits to a child when one parent asks for a custody order reflecting their plan to move."[7] Whether the superior court properly applied the *Moeller-Prokosch* legal standard is subject to de novo review.[8]

### 2. The court's analysis of best-interests factor five

The superior court found that Saffir's move to New York was legitimate, and neither party disputes this finding.[9] However Saffir argues that the superior court did not apply the proper symmetric considerations when it analyzed the fifth best-interests factor. Factor five requires the superior court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."[10] We have explained that where one parent is moving from Alaska, factor five requires the superior court to consider "not only the desirability of maintaining

---

[6]     *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 535-36 (Alaska 2004) (*Moeller-Prokosch III*).

[7]     *Pingree v. Cossette*, 424 P.3d 371, 385 (Alaska 2018).

[8]     *See Mengisteab*, 425 P.3d at 85, 87, 89.

[9]     Saffir does argue, however, that the superior court failed to assume that her move would occur by ordering two alternative custody schedules: one for if she stays in Alaska and one for if she moves to New York. We disagree. We rejected this argument in *Rego v. Rego*, where we held that "the superior court is authorized to order 'alternative custody arrangements dependent on whether the move occur[s].' " 259 P.3d at 456 (Alaska 2011) (alteration in original) (quoting *Silvan v. Alcina*, 105 P.3d 117, 122 (Alaska 2005) (citing *Moeller-Prokosch I*, 27 P.3d at 317 n.8)). We explained that a superior court "may be confronted with a custodial parent who would choose not to move if he or she cannot maintain custody," but that "[t]he chance that the superior court's decision will influence [the parent's] decision to move does not justify reversing the superior court's order." *Id*. at 456 (quoting *Moeller-Prokosch I*, 27 P.3d at 316).

[10]     AS 25.24.150(c)(5).

geographical continuity, but also the importance of maximizing relational stability."[11] This means that "[c]ourts should consider 'social and emotional factors such as who the primary care-giver was for the child.' "[12] Factor five was the basis for our decision in *Moeller-Prokosch III,*[13] and we have "expressed particular concern that . . . court[s] conduct a symmetrical analysis with regard to a child's relational and geographical stability."[14]

The superior court found that factor five favored Wheeler. It explained that the child had "lived in her [f]ather's home since birth" and that "[m]aintaining stability and continuity is important for toddlers." The court noted that Saffir had created a strict routine for the child that "has sometimes hindered [Wheeler's] ability to parent," and expressed concern that this dynamic would only worsen if the child moved across the country with Saffir. But the superior court did not discuss the impact that being

---

[11]    *Chesser-Witmer v. Chesser*, 117 P.3d 711, 719 (Alaska 2005) (quoting *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001)).

[12]    *Veselsky v. Veselsky*, 113 P.3d 629, 635 (Alaska 2005) (quoting *Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996)). We have acknowledged that the child's relationship with extended family could be properly considered as a part of factor five as well. *See Rego*, 259 P.3d at 460 ("The superior court considered circumstances that Dante was likely to encounter in each environment, such as contact with extended family, and showed due consideration for the statutory 'stability' factor."). Saffir argues that the superior court failed to consider the "the importance of [the child's] strong bond with her maternal extended family" in New York. We note, however, that the superior court recognized that a move to New York would "be good for the [child] because she has extended family there."

[13]    *See* 99 P.3d at 535 n.17 ("[T]he impact of separation is . . . properly considered as part of the stability analysis under the fifth statutory factor.").

[14]    *Mengisteab v. Oates*, 425 P.3d 80, 87 (Alaska 2018).

separated from Saffir would have on the child, even though it had found that Saffir was her "primary day to day caregiver."

We recently vacated a similar custody order in *Mengisteab v. Oates*.[15] There a mother sought to modify an existing custody agreement, which had given her primary custody, because "she would be moving out of state."[16] After a hearing the superior court issued a written order finding that it was in the child's best interests to live in Alaska with his father.[17] The order placed a heavy emphasis on the mother's unwillingness to facilitate a relationship between the father and the child: "[The child's] best interests would best be served by having both parents available to [him]. If left in mother's primary custody in Washington, the court believes that mother would continue to interfere with father's access and parenting."[18] We found that "the court erred in failing to adequately consider the effect living in Alaska without his mother and siblings would have on continuity and stability in [the child's] life."[19] Although the superior court discussed the effect that the mother's move would have on the father's ability to parent, it was error for it not "to consider the potential consequences to [the child] both if he were to live in Washington with [his mother] and if he were to live in Alaska without her."[20]

---

[15]     *Id*. at 92.

[16]     *Id.* at 84.

[17]     *Id.* at 85.

[18]     *Id.* at 84-85 (second alteration in original) (quoting superior court's order).

[19]     *Id.* at 87.

[20]     *Id.* at 89 (citing *Moeller-Prokosch III*, 99 P.3d 531, 535-36 (Alaska 2004)).

The superior court's analysis here suffers from the same imbalance. The court placed great weight on its finding that Saffir would interfere with Wheeler's ability to parent. But it did not address the impact of removing the child from her established routine or from Saffir, the parent who established it. Our precedent regarding symmetric analysis of the fifth best-interests factor required the superior court to do so,[21] especially in light of its finding that "Saffir has been [the child's] primary custodian."[22] We therefore hold that there was a failure to engage in proper symmetrical analysis, which constituted error.

**B.    The Superior Court Did Not Abuse Its Discretion By Not Ordering Protective Measures When The Child Is In Wheeler's Care.**

Having concluded that the superior court's legal error with respect to its analysis of the fifth best-interests factor is grounds for remand,[23] we now turn to her argument that the superior court erred by not putting in place protective measures to ensure Wheeler's sobriety while caring for the child. "We will uphold a superior court's . . . visitation determinations 'unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion.' "[24]

---

[21]    *See Moeller-Prokosch III*, 99 P.3d at 535 (stating that the superior court failed to "consider the detriment to [the child] if he were separated from his mother upon her move to Florida.").

[22]    *See Veselsky v. Veselsky*, 113 P.3d 629, 635 ("Courts should consider 'social and emotional factors such as who the primary care-giver was for the child.' " (quoting *Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996))).

[23]    We have also considered Saffir's arguments regarding factors one, two, six, seven, eight, and nine and conclude that the superior court's findings had support in the record and were not clearly erroneous. That said, the superior court may need to reweigh the best-interests factors after it reconsiders factor five.

[24]    *Houston v. Wolpert*, 332 P.3d 1279, 1282 (Alaska 2014) (quoting

(continued...)

Saffir asked the superior court to require Wheeler to be sober while with their daughter and to order affirmative measures to ensure his sobriety. The court's final order granted primary physical custody to Wheeler, but did not explicitly require his sobriety or otherwise include the measures Saffir requested.

While it did not explain the reason for these omissions, the superior court discussed Wheeler's drinking at length and ultimately found that it did not "affect the well[-]being of the child." This finding is supported by the record. The superior court explained that while Wheeler "did have issues with alcohol[,] [h]e has taken steps to address this issue." Wheeler testified that he had sought proper medical care for chronic pain caused by a spinal injury and was no longer self-medicating with alcohol. He said that he had not had a drink for three or four months at the final custody hearing and introduced Soberlink data to show that he had been sober during the month since the interim custody hearing. Wheeler also testified that he does not drink before or while caring for the child and indicated that he thought it would be irresponsible to do so.

Saffir offered conflicting evidence to prove that Wheeler continued to drink through the period during which he claimed sobriety and that this drinking endangered their child. But "[w]hen the superior court is faced with conflicting evidence, we do not re-weigh it. 'It is the job of the trial court, not the appellate court, to judge the credibility of the witnesses and to weigh conflicting evidence.' "[25] We cannot say that the superior court's finding was clearly erroneous in light of the evidence presented at trial. We

---

[24]      (...continued)
*Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

[25]      *Silvan v. Alcina*, 105 P.3d 117, 122 (Alaska 2005) (quoting *Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211, 1215 (Alaska 1984)).

therefore conclude that the decision to put no protective measures in place while the child was in Wheeler's care was not an abuse of discretion.

## IV.   CONCLUSION

We VACATE the superior court's February 15, 2018 custody order and REMAND for further analysis consistent with this opinion.