NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ARICA J. CARPENTER, f/k/a ARICA J. BLUE, | ) ) ) Supreme Court No. S-17626 |
| Appellant, | ) ) Superior Court No. 3PA-16-01232 CI ) |
| v. | ) MEMORANDUM OPINION ) AND JUDGMENT* |
| CHRISTOPHER M. BLUE, | ) ) No. 1822 – March 17, 2021 |
| Appellee. | ) ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath and Kristen C. Stohler, Judges.

Appearances: Douglas C. Perkins, Hartig Rhodes LLC, Anchorage, for Appellant. Christopher M. Cromer, Aglietti, Offret & Woofter, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I.    INTRODUCTION

A mother who had been her daughter's primary caregiver decided to move out of state for work. Following an evidentiary hearing, the superior court found that it was in the daughter's best interests to remain in Alaska with her father during the school year. The mother appeals, arguing that the superior court erred by failing to conduct the

---

\*       Entered under Alaska Appellate Rule 214.

symmetrical analysis required when a custodial parent moves out of state — weighing the geographical and relational impact on the child both of moving and of staying behind — and that the court clearly erred or abused its discretion in its analysis of other best interests factors.

We conclude that the court erred by failing to conduct the required symmetrical analysis. We further conclude that the court's analyses of several other best interests factors are inadequate for appellate review because, without further explanation, they do not appear to support the court's award of custody. We therefore remand to the superior court for reconsideration of the best interests analysis necessitated by the mother's move.

## II. FACTS AND PROCEEDINGS

### A. Facts

Arica Carpenter and Christopher Blue married in 2014 and had a daughter that September. In March 2016 Carpenter and Blue separated. Carpenter is a nurse with the United States Public Health Service, and Blue is an ARCTEC Alaska radar specialist and a communications specialist for the Air National Guard. At the time of the modification hearing now at issue, Blue's ARCTEC job required five days of travel every six weeks, and his service with the Air National Guard required travel one weekend per month and two weeks per year (though he testified that travel was generally more frequent). He testified that his work schedule could be "very demanding."

Carpenter was their daughter's primary caretaker during the marriage. When the couple separated they agreed that Carpenter would have primary physical custody and Blue would have visitation when his work allowed; this was later formalized in a schedule by which Carpenter had custody 70% of the time and Blue had custody 30% of the time. The court adopted their 70/30 arrangement in its child support order.

This arrangement continued for the next three years, though the parties disagree over how much time Blue actually spent with their daughter. Blue was deployed between March and June 2017 and again from late November 2018 until February 2019. According to Carpenter, she remained primarily responsible for their daughter's care after the divorce. Carpenter testified that Blue did not attend any of the child's medical appointments and that she was the one who arranged for daycare and stayed home from work when the child was sick.

According to Blue, his communication with Carpenter was very "one-sided"; he testified that he tried to communicate with her but that she would not reciprocate (for example, she would take the child to doctors' visits without telling him beforehand). He also testified that he offered more help with childcare but that Carpenter did not take him up on his offer.

In January 2019 Carpenter requested a work transfer to Texas. She testified that the transfer was competitive and that she thought the request would likely be denied. But in March she was notified that the transfer was approved, and two days later she informed Blue that she would be moving to Texas in May.

With the move approaching, Blue increased his custodial time with the child to "[c]loser to 50/50." Carpenter testified that the child's extended stays with Blue coincided with reports that she was having new behavioral problems at daycare, though Blue testified that the problems had been going on "significantly longer."

Both parents then filed motions to modify custody. Trial was held over two days in May and June 2019, with five weeks in between. The court ordered that the child spend the first two or three of those intervening weeks in Texas with Carpenter. Based on the behavioral issues at daycare, the court reasoned that the child was "at an at-risk stage at [that] point," and, because Carpenter had been the primary caregiver, the court was "a little worried about [the child's] emotional state" if Carpenter went to Texas

without her.  Carpenter testified that their three weeks together in Texas went smoothly; the child "seemed very normal and well-adjusted."

When the hearing resumed in late June, Blue testified that he had found a counselor to work with the child and that the child had already had two counseling sessions with resulting improvements in her behavior.  At the close of evidence the court ordered that the child stay with Blue in Alaska and continue with counseling pending the court's written order.

### B.    The Superior Court's Custody Order

The court issued its written custody order in August.  It first went through the best interests factors of AS 25.24.150(c), concluding that they favored an award of custody that kept the child in Alaska.  The court ordered that until the child began school in a year, the parties were to share physical custody equally, rotating custody every three months.  Then, effective August 2020, Blue would have primary physical custody during the school year, while Carpenter would have custodial periods during summer, spring, and winter breaks.  The court also ordered that the non-custodial parent have "liberal telephonic visitation" and "video-call visits with the child at least three times per week."

Carpenter filed a motion for reconsideration, which was denied.  Carpenter now appeals the custody order, challenging the court's analysis of the best interests factors.

### III.    STANDARDS OF REVIEW

This case involves application of the *Moeller-Prokosch* framework, "a two-step test that the superior court must apply in its best interests analysis if a parent's plans to move are tied into the custody determination."[1]  "Whether the superior court properly

---

[1]    *Roman v. Karren*, 461 P.3d 1252, 1263 n.30 (Alaska 2020) (citing *Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 316-17 (Alaska 2001)).

applied the *Moeller-Prokosch* legal standard is subject to de novo review."[2]

"We will overturn a court's best interests determination 'only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous.' "[3] "[W]e will find an abuse of discretion 'if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[4] But the "trial court is required to make findings on the various statutory factors which are sufficient to make the basis of its decision susceptible to review."[5]

## IV. DISCUSSION

### A. The Failure To Conduct A Symmetrical Analysis Under The Fifth Best Interests Factor Was Legal Error.

"A parent's anticipated relocation constitutes a substantial change in circumstances sufficient to justify considering a physical custody modification."[6] When considering a modification, the superior court must take into account the best interests factors listed in AS 25.24.150(c).[7] The superior court in this case — in its analysis of the

---

[2]     *Saffir v. Wheeler*, 436 P.3d 1009, 1013 (Alaska 2019).

[3]     *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)).

[4]     *Id.* (quoting *Evans v. Evans,* 869 P.2d 478, 479-80 (Alaska 1994)).

[5]     *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997).

[6]     *Ott v. Runa*, 463 P.3d 180, 185 (Alaska 2020).

[7]     AS 25.20.110(g) ("In making a determination of the best interests of the child [in a modification proceeding], the court shall consider the factors under AS 25.24.150(c).").

fifth best interests factor[8] — found that both parents provided necessary stability for their daughter but that continuity favored a custody award that would keep the child in Alaska. Carpenter disagrees that this factor favors Blue; she argues that the court failed to do a proper "symmetrical analysis" of the impact on the child of moving with her mother or remaining in Alaska with her father. We agree with Carpenter that the court's analysis of the fifth best interests factor did not follow the correct legal framework.

### 1. The *Moeller-Prokosch* framework requires a symmetrical analysis.

In *Moeller-Prokosch v. Prokosch* we established a two-step test for courts to follow when considering whether to modify custody because of one parent's decision to leave the state.[9] The first step is to determine whether the parent's motive for moving is legitimate;[10] here, the legitimacy of Carpenter's move to Texas for work was not disputed. The second step is to "assume that the move will take place and then consider the . . . statutory factors to determine the custody arrangement that serves the best interests of the [child]."[11] This "requires symmetric consideration of the consequences to [the child] both if [the parent] leaves with [the child] and if [the parent] leaves without

---

[8] The court must consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity . . . ." AS 25.24.150(c)(5).

[9] *Saffir v. Wheeler*, 436 P.3d 1009, 1013 (Alaska 2019) (citing *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 535-36 (Alaska 2004)).

[10] *Id.*; *see Rego v. Rego*, 259 P.3d 447, 453 (Alaska 2011) ("A move is legitimate if it is not primarily motivated by a desire to make visitation more difficult.").

[11] *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005) (footnote omitted).

[the child]."[12] In particular, the court should "conduct a symmetrical analysis with regard to a child's relational and geographical stability."[13]

The superior court in *Moeller-Prokosch* recognized that the child "would be devastated" if he left his father in Alaska to move to Florida with his mother, but we concluded that the court erred by failing to "discuss the corresponding effect on" the child if he stayed in Alaska while his mother moved away.[14] Because weighing continuity "entirely on the child's geographical stability would always favor placing the child with the non-moving parent,"[15] we held that courts should "also consider relational aspects of stability."[16] This includes "social and emotional factors such as who the primary care-giver was for the child."[17] And in *Moeller-Prokosch* we noted that "the impact of separation is . . . properly considered as part of the stability analysis under the fifth statutory factor"[18] set out in AS 25.24.150(c)(5), which requires the superior court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."

### 2. The custody order does not reflect the required symmetrical analysis.

Because the legitimacy of Carpenter's move was undisputed, *Moeller-*

---

[12]    *Saffir*, 436 P.3d at 1013 (alterations in original) (quoting *Moeller-Prokosch*, 99 P.3d at 535-36).

[13]    *Mengisteab v. Oates*, 425 P.3d 80, 87 (Alaska 2018).

[14]    *Moeller-Prokosch,* 99 P.3d at 535.

[15]    *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001).

[16]    *Mengisteab*, 425 P.3d at 87-88 (citing *Moeller-Prokosch*, 99 P.3d at 535).

[17]    *Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996).

[18]    *Moeller-Prokosch,* 99 P.3d at 535 n.17.

*Prokosch* required the court to evaluate and symmetrically analyze the impact on the child of Carpenter's move to Texas, both if the child stayed in Alaska and if she moved to Texas with her mother. But the court's analysis is incomplete. The court found it undisputed that Carpenter "has provided the majority of care for [the child] since birth." It also found that "Blue was often unavailable due to deployments," a fact the court said it would "not consider for purposes of determining custody"; that "both parties have provided a stable and satisfactory environment for the child," including "personal relationships"; and "that continuity of stable environment has existed in Alaska." The only finding that appears to favor the child remaining in Alaska is her stable environment here, but this environment was built with the help of both parents. And as we have emphasized before, "a 'continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent.' "[19] That is why the court must also consider relational stability, particularly "social and emotional factors such as who the primary care-giver was for the child"[20] and "the impact of separation" from the other parent.[21]

Here, while finding stability in Alaska, the court's order fails to consider how that stability will be affected by the child's prolonged separation from her mother. This is particularly notable given the court's observation when ordering interim custody between the trial days: The court noted that Carpenter had "probably spent the majority of the time with the daughter, most of the time," and the court was therefore "a little worried about [the child's] emotional state with Mom just taking off [to Texas] without her." The court therefore provided that Carpenter should take the child with her for the

---

[19]     *Mengisteab*, 425 P.3d at 87-88 (quoting *Moeller-Prokosch*, 99 P.3d at 535).

[20]     *Rooney*, 914 P.2d at 217.

[21]     *Moeller-Prokosch,* 99 P.3d at 535 n.17.

next two or three weeks. But the court's final custody order does not appear to give the same consideration to how the child's relational stability would be affected if she were separated from her mother, her primary caregiver, for long periods. Because consideration of this issue is required under the *Moeller-Prokosch* symmetrical analysis, it was legal error to omit it.

**B.      Other Findings In Support Of The Superior Court's Best Interests Determination Are Insufficient For Our Appellate Review.**

The superior court found that the best interests factors weighed in favor of Blue, though it expressly found only one factor — factor six[22] — that "weighs slightly in . . . Blue's favor"; its conclusions about the other factors were less clearly stated. Carpenter challenges the court's analysis of factors one,[23] two,[24] and six, arguing that the court overlooked facts favorable to her position. We conclude that the court's analysis is not adequate for our appellate review.[25] Because we cannot determine whether the court abused its discretion in weighing the best interests factors, we remand for renewed consideration of the challenged factors along with the symmetrical analysis, discussed above, that is required of factor five under *Moeller-Prokosch*.

---

[22]      AS 25.24.150(c)(6) ("the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

[23]      AS 25.24.150(c)(1) ("the physical, emotional, mental, religious, and social needs of the child").

[24]      AS 25.24.150(c)(2) ("the capability and desire of each parent to meet [the child's] needs").

[25]      *See Waggoner v. Foster*, 904 P.2d 1234, 1235 (Alaska 1995) ("[T]he trial court must provide '[a]dequate findings of fact . . . so that a reviewing court may clearly understand the grounds on which the lower court reached its decision.' " (second and third alterations in original) (quoting *Wright v. Gregorio*, 855 P.2d 772, 773 (Alaska 1993))).

When considering "the physical, emotional, mental, religious, and social needs of the child" under AS 25.24.150(c)(1), the superior court made note of the child's recent behavioral issues and that she was currently "attending counseling . . . to identify and address" them. The court noted that "[c]ounseling was facilitated by . . . Blue" and that it was "imperative to [the child's] emotional wellbeing" that the counseling continue "with a consistent provider" through the transition in custody "and as [the child] begins school." The court also found that "both parties" provided for the child's social needs. The order does not say that this factor favors Blue, but Carpenter's argument on appeal assumes that to be the order's intent.

In its analysis of the next factor, "the capability and desire of each parent to meet [the child's] needs" under AS 25.24.150(c)(2), the court said it was considering "the parties' request based on their individual status *at the time of the request*." (Emphasis added.) Thus, given that the child had lived in Alaska all her life up to that point and that Carpenter was just beginning to make a new life in Texas, the court found "that the child has a more extensive social support network in Alaska" and that "[t]he more significant factor . . . is that [the child] has established care providers in Alaska, including medical, educational, and behavioral." The court contrasted this finding with the absence of any "evidence of similar resources in Dallas, as there have been no such resources yet established." The court's conclusion — again not explicitly stated — appears to be that Blue was more capable of meeting the child's needs because he was remaining in Alaska where all the child's support systems were already in place.

But factor two concerns the parents' "capability and desire" to meet the child's needs, not necessarily how those needs are being met "at the time of the request" for a custody modification. Relevant to the parents' "capability and desire" in this case is the evidence — apparently undisputed — that it was Carpenter who was responsible in the first place for setting up all of the "established care providers in Alaska" (other

than the very recent counseling). That Carpenter did not yet have equivalent resources "established" in Texas should not have counted against her, given that custody was yet to be decided; she testified, in fact, that she had already identified the neighborhood school, and we see nothing in the record that would cast doubt on her "capability and desire" to locate the other resources necessary to meet her daughter's needs.

Carpenter challenges other aspects of the court's analysis of factors one and two. She argues that although the court credits Blue with facilitating the counseling, it was the court, not Blue, who prompted the parties "to get on top of" the child's behavioral issues before she started school. She also contends that it was actually Blue's new wife, not either parent, who took the child to her counseling appointments and was communicating directly with the counselor. Carpenter further argues that even if Blue should be given credit for the counseling, this was the first time he had taken steps to arrange for the child's health care; all other caregivers were in place because of Carpenter's own efforts. She argues that the court failed to consider that her flexible work schedule would allow her to spend more time with their daughter than Blue could manage with his "evening and night shifts" and remote work schedule. She argues that the court erred in determining that both parents offer their daughter equivalent emotional stability, and she points out that the child's sister, brother, and grandmother all live in or very near her new home in Texas.

We agree that the court's analysis of factors one and two — the child's needs and the parents' capability and desire to meet them — does not support its conclusion that it was in the child's best interests to remain in Alaska. If the court concluded that these factors favor Blue, as it appears, a more complete explanation of

that conclusion is necessary for us to exercise appellate review.[26]

## V.    CONCLUSION

We REMAND the custody modification order to the superior court for reconsideration of the best interests analysis necessitated by Carpenter's move out of state.  We do not retain jurisdiction.

---

[26]    The court should also revisit factor six, "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."  AS 25.24.150(c)(6).  Although finding that both "parties are able and willing to engage in effective communication regarding [their daughter]," the court found "that this factor weighs slightly in [Blue's] favor" because "Carpenter occasionally refuses to share information or omits significant details in her communication with [Blue] on issues that affect [their child]," citing, as an example, "the short notice [Carpenter] provided to [Blue] regarding her move to Texas."  The record appears to support Carpenter's argument that she considered approval of the transfer request to be unlikely and notified Blue within two days of being notified that it had been approved.  If this example is what weighted the factor in Blue's favor, we would likely find an abuse of discretion.  The court should consider on remand, in light of a more substantial and up-to-date record, whether its finding about Carpenter's relative willingness to facilitate the parent-child relationship is still valid.

Finally, given the court's finding that the parties were "able and willing" to communicate about their daughter's needs, we reject Carpenter's claim that the court abused its discretion by failing to order use of the "Our Family Wizard" communications program and a specific communications schedule.  *See Martin v. Martin*, 303 P.3d 421, 424 (Alaska 2013) (noting superior court's broad discretion in child custody matters).