NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| ZACHARY BRYANT McCANN, | ) | |
| | ) | Supreme Court No.: S-18429 |
| Appellant, | ) | |
| | ) | Superior Court No.: 3AN-18-10907 CI |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| JENNIFER WHITNEY McCANN, | ) | <u>AND JUDGMENT</u>* |
| | ) | |
| Appellee. | ) | No. 1951 – February 22, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Evan A. Barrickman, Law Office of Evan A. Barrickman, P.C., Anchorage, for Appellant. D. Patrick Phillip, Carlson Law Group, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

This child custody appeal arises out of a mother's decision to move out of state. In light of her plan to move, the mother sought to modify the original custody order, seeking primary custody of her five-year-old son so that he could move with her. The superior court granted the mother's motion, and the father appeals. He argues the superior court failed to properly conduct a symmetrical analysis of the child's best

---

\*      Entered under Alaska Appellate Rule 214.

interests, failed to give adequate weight to the child's relationships in Alaska, and was wrong to grant the mother primary custody based on the finding that she had superior administrative parenting abilities. Seeing no error, we affirm the superior court's decision.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Jennifer McCann and Zachary McCann were married in 2015 and had a son together in 2016. They divorced in 2019. The divorce decree provided for joint legal custody and equally shared physical custody.

### B.     Proceedings

In 2021 Jennifer filed a motion to modify custody. She sought primary physical custody of their son so she could move with him out of state. Zachary opposed, arguing that awarding him primary physical custody would be in their son's best interests.

#### 1.     Evidentiary hearing

The superior court held an evidentiary hearing. Jennifer and Zachary testified along with other witnesses: Jennifer's mother, Jennifer's romantic partner, Zachary's romantic partner, and Zachary's partner's mother.

##### a.     Jennifer's testimony

Jennifer works for Boeing. She testified that her supervisors asked her to relocate to St. Louis and that the move was necessary to advance her career. Jennifer expects to be in St. Louis for the next 10 to 20 years. Jennifer also testified that her position with Boeing gives her flexible hours so that she can leave work or work from home to care for the child.

Jennifer believes that if the child moved with her to St. Louis he would be able to see her family (who live in the Lower 48) more often because travel would be easier and less expensive. She testified that the child speaks with her family by video

every day that Jennifer has custody time.  She also testified that if she moved she would facilitate a relationship between the child and Zachary's family in Alabama.

Jennifer testified about the day-to-day care she provides the child.  She does educational activity books with him, works on his reading and fine motor skills, and uses a responsibility chart to help him learn other foundational skills, like getting ready for bed.  She also cares for his hygiene, keeping track of his bath time and clipping his nails regularly.  She asserted that, on occasion, she has had to remind Zachary of what days their son has bath time.  She testified that she also cares for the child's medical needs by making sure he takes medication and scheduling his doctor appointments.  She also testified that she plans their son's birthday parties on her own, although she and Zachary split the cost of these events.

### b.    Zachary's testimony

Like Jennifer, Zachary testified that he prioritizes their son's health and medical needs.  For example Zachary attended the child's speech therapy appointments, makes sure the child takes medication when needed, and takes him to the doctor and dentist.  Similarly Zachary makes sure the child practices healthy habits like brushing his teeth and cleaning up after himself.

Zachary testified he and the child spend a great deal of time doing outdoor activities together such as fishing, hiking, hunting, and going to Zachary's partner's family cabin.  Zachary also helps sign the child up for extracurricular activities like hockey.

Zachary testified that he has a large network of relationships here that are significant to the child, including Zachary's partner, her parents, the child's godparents, and other family friends.  Zachary testified that the child and Zachary's partner are close and that she is a supportive figure in the child's life.  Zachary explained that his partner tries to see the child every day that he is in Zachary's custody.  Zachary also testified that his partner's parents have become "grandparent-type figure[s]" in the child's life,

that the child enjoys spending time with them and speaks of them often, and that they often talk to the child on the phone during Zachary's custody time.

### c. Other witnesses' testimony

Jennifer's mother testified that if the child moved to St. Louis, she would be able to make the trip from California to see him more often.

Jennifer's romantic partner testified that he and Jennifer have discussed getting married and that he intends to move to St. Louis, where his family lives, in five years when he retires from the Air Force. He also testified that he was about to move to Phoenix, Arizona, where he would be stationed.

Zachary's romantic partner testified that she has taken on a "stepmom role" in the child's life, "where [she's] not his mom, but . . . [they] have a very strong emotional connection." She explained that she and the child spend significant time together during Zachary's custodial time and that she helps to make his meals and to get him ready in the mornings and evenings. She also testified that she regularly spends time reading, playing games, and engaging in outdoor activities with the child.

Zachary's partner's mother testified that she feels like the child "is part of [their] family now." She and her husband enjoy talking to the child on the phone and having him over to their house. She testified that she and her husband had Zachary and the child over to their house to celebrate Christmas Eve last year even though their daughter, Zachary's partner, was not able to join. The partner's mother testified that she worries their relationship with the child will become strained if he moves to St. Louis.

### 2. Superior court's ruling

The superior court granted Jennifer's motion to modify custody. First the superior court found that Jennifer's move was for legitimate reasons. The court then conducted a symmetrical analysis of the child's best interests. Overall the court found the parents to be "as equal as two parents can be in terms of all the relevant factors" and

that they had both been "models of what should happen for all children when parents divorce." Notably, the court found that the child would "be almost equally impacted by moving or staying because either situation would change the pretty much completely balanced life he has now."

As to the first and second factors of the best interests analysis[1] — the needs of the child and the capability of each parent to meet those needs — the court found that Jennifer and Zachary's son "is a healthy, active child with the usual needs of a child his age, and no unusual needs." It also found that both parents were devoted caregivers, neither parent was the primary caregiver, and both "provide [the child] with love and affection, and he loves them both dearly." The court found both parents to be equally willing to facilitate a relationship with the other parent. The court further found Jennifer was "better" at "the administrative aspects of life, like appointment scheduling," that "provide stability, consistency, and routine." Yet the court also found that "both parents are equally involved in those activities and decision-making."

Turning toward the fifth factor — stability and continuity — the court found that separation from either parent would be equally impactful and noted the importance of Jennifer and Zachary's son being able to spend quality time with both parents. When the court considered the effect on the child of staying in Alaska, it noted the importance of outdoor activities with Zachary and the strong non-parental relationships with Zachary's partner and her family. The court found this network of relationships to be significant and stated that it gave these relationships weight when considering the son's relational stability.

The court then considered how the same factor would be affected if the child moved with Jennifer. The court found that the child would likely form new

---

[1]     The factors the superior court must consider when determining the child's best interests in custody matters are set forth in statute. *See* AS 25.24.150(c).

relationships in St. Louis and would likely see more of his family in the Lower 48. The court also found that if the child moved, his relationships in Alaska would still exist because he would spend time in Alaska during summers and school breaks. The court ultimately stated that because there was "scant difference between these parents, [the evidence] does require the Court to give weight to [the child's] relational stability and support network in Alaska." The court explained that it was careful not to focus on geographic stability alone. Instead it was "giving some weight to [the child's] relationships here that aren't blood relationships but are still great relationships."

Ultimately the court granted Jennifer primary custody of the child, awarding her custody during the school year so that the child could move with her to St. Louis. The court held that based on the evidence there was "a very slight tip of the scale" toward Jennifer because "all other factors being equal, . . . [Jennifer's] parenting style and . . . administrative management of day to day activities weighs in favor of awarding physical custody during the school year." It granted Zachary custody during all school breaks, noting this schedule gave him "summers to hunt, winters to ice fish" with the child.

## III. STANDARD OF REVIEW

"We set aside a trial court's determination of custody 'only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion.' "[2] "Once a court has identified the best interests factors relevant to its decision, we review the individual findings for clear error and

---

[2] *Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch III*), 99 P.3d 531, 534 (Alaska 2004) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

how the factors were balanced for abuse of discretion."[3]  A finding of fact "is clearly erroneous when this court is left with a definite and firm conviction that the trial court has made a mistake."[4]  The superior court has abused its discretion if it "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[5]  Whether the superior court properly conducted a symmetrical analysis based on a parent's move is a legal question we review de novo.[6]

## IV.  DISCUSSION

When one parent seeks to modify a custody order due to an out-of-state move, the superior court must consider the request under a two-step test outlined in the *Moeller-Prokosch* line of cases.[7]  The court first considers whether the move is legitimate.[8]  A proposed move is legitimate if it "was not primarily motivated by a desire to make visitation . . . more difficult."[9]  If the move is found to be legitimate, the

---

**3**    *Brett M. v. Amanda M.*, 445 P.3d 1005, 1009 n.9 (Alaska 2019) (citing *Blanton v. Yourkowski*, 180 P.3d 948, 951 (Alaska 2008)).  Some factors require balancing findings of fact within the factor itself — for example the stability analysis for the fifth factor requires balancing relational and geographic stability — and this balancing is reviewed for abuse of discretion.  *See Rego v. Rego,* 259 P.3d 447, 460 (Alaska 2011) (noting that stability has geographical and relational components and reviewing the superior court's balancing of these components for abuse of discretion).

**4**    *Moeller-Prokosch III*, 99 P.3d at 534.

**5**    *Id.* (quoting *Hamilton*, 42 P.3d at 1111.

**6**    *Saffir v. Wheeler*, 436 P.3d 1009, 1013 (Alaska 2019).

**7**    *See Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch I*), 27 P.3d 314, 316 (Alaska 2001).

**8**    *See id.*

**9**    *Id.* (alteration in original) (quoting *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989)).  If the move "is found to be for legitimate reasons," then the court does

court then assumes the move will take place and "determin[es] what custody arrangement would be in the child's best interest[s]."[10] To determine what is in the best interests of the child, the court looks to the statutory factors listed in AS 25.24.150(c), including the child's needs, the parents' capability to meet those needs, and the importance of maintaining stability for the child.[11] The best interests analysis requires a symmetrical analysis "of the consequences to [the child] both if [the parent] leaves with [the child] and if [the parent] leaves without the child."[12]

The issues before us on appeal all arise out of the second step of the *Moeller-Prokosch* test: what custody arrangement is in the child's best interests?[13] We conclude that the superior court did not err in its symmetrical analysis of the child's best interests or its determination that the child's interest in stability favored neither parent. The court did not clearly err in finding that Jennifer had greater ability to administratively manage the child's life, nor did it abuse its discretion in giving weight to this factor. We therefore affirm the superior court's decision to award Jennifer physical custody of the child during the school year.

---

"not hold the move against the party who proposes to move" in the best interests analysis. *See Moeller-Prokosch v. Prokosch* (*Moeller-Prokosch II*), 53 P.3d 152, 155 (Alaska 2002). A court cannot "require a custodial parent to forego relocation if custody with that parent remains in the child's best interest[s] and the relocation is not for an illegitimate reason." *Moeller-Prokosch I,* 27 P.3d at 317.

[10] *Moeller-Prokosch I*, 27 P.3d at 316.

[11] *Id.*

[12] *Saffir v. Wheeler,* 436 P.3d 1009, 1013 (Alaska 2019) (alterations in original) (quoting *Moeller-Prokosch III,* 99 P.3d 531, 535-36 (Alaska 2004)).

[13] Zachary does not challenge the legitimacy of Jennifer's move on appeal.

**A.      There Was No Error In The Superior Court's Symmetrical Analysis Of The Best Interests Factors.**

Zachary argues the superior court failed to conduct a symmetrical analysis when weighing the child's best interests.  He asserts the superior court failed to consider the negative effect on the child of spending the school year away from his significant non-familial relationships in Alaska.   The superior court correctly conducted a symmetrical analysis by considering the effect on the child of both staying in Alaska with Zachary and of moving to St. Louis with Jennifer.

"A symmetrical analysis does not require detailed parallel findings on every best interests factor."[14]  "[I]t is sufficient if the court's findings provide 'a clear indication of the factors [that the court] considered important in exercising its discretion or allow[] us to glean from the record what considerations were involved.' "[15]  If the superior court does not address the impact of removing the child from each parent, the court fails to conduct a symmetrical analysis.[16]  The court should consider not only the effect of separating the child from the non-moving parent but also the "corresponding effect" of the moving parent leaving the child behind.[17]  The custody determination must not be "one-sided."[18]

In this case the superior court conducted an adequate symmetrical analysis.  The court stated that Jennifer and Zachary's child "will be almost equally

---

[14]      *Mengisteab v. Oates*, 425 P.3d 80, 87 (Alaska 2018) (citing *Rego v. Rego*, 259 P.3d 447, 455 (Alaska 2011)).

[15]      *Id.* (second alteration in original) (quoting *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1092 (Alaska 2015)).

[16]      *See Saffir*, 436 P.3d at 1013-14.

[17]      *Moeller-Prokosch III*, 99 P.3d at 535; *see also Saffir*, 436 P.3d at 1013-14.

[18]      *Brett M. v. Amanda M.*, 445 P.3d 1005, 1010 (Alaska 2019).

impacted by moving or staying," demonstrating that it considered the impact to their child of both moving and staying, which is the heart of the symmetrical analysis. The superior court first "consider[ed] the situation if [the child] remains in Alaska" and made findings about Zachary's ability to care for the child and the child's stability in Alaska. It then "[a]nalyz[ed] this same factor if [the child] moves with [Jennifer]" and made findings regarding the child's relationships if he moves to St. Louis. The court also made a number of parallel findings pertaining to both parents: Zachary and Jennifer are "as equal as two parents can be in terms of all the relevant factors" and both are willing to and capable of meeting the child's needs. The court found that "separation from either [parent] is likely to be equally impactful."

This is not the type of "one-sided" determination we have deemed inadequate.[19] Although the superior court did not provide detailed parallel findings for each factor, there is enough to show the court considered the impact of both staying and moving. There was no error in this symmetrical analysis.

**B.    The Superior Court Did Not Err Or Abuse Its Discretion When Assessing The Child's Relational And Geographic Stability.**

Zachary argues the superior court erred in several ways when it analyzed the child's stability under factor five of the best interests test.[20] Zachary challenges the factual findings that Jennifer's extended family would likely see the child more if the child moved to the Lower 48 and that the child would likely form new relationships in St. Louis. Zachary also argues the superior court abused its discretion by giving the child's Alaska relationships inadequate weight.

---

[19]    *See Brett M.*, 445 P.3d at 1010.

[20]    *See* AS 25.24.150(c)(5) (considering "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

First, the superior court's factual findings were not clearly erroneous. The superior court found that the child "would not be any closer geographically to his maternal grandmother" if he moved to St. Louis, but did find that his family in the Lower 48, including his grandmother, would "likely see more of him." This finding is supported by testimony from both Jennifer and Jennifer's mother that they believed the trip between California and St. Louis would be easier and happen more frequently. In light of this evidence the superior court's finding that Jennifer's family would "likely see more of [the child]" was not clearly erroneous.[21]

Second, we see no flaw in the court's conclusion that the child's interest in stability did not favor either parent. When analyzing a child's stability under factor five, the court must consider both geographic stability and relational stability.[22] "In the parent relocation context, . . . a 'continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent,' " so courts must "also consider relational aspects of stability."[23] "[S]tability is

---

[21] *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) ("The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' " (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011).

[22] *Mengisteab v. Oates*, 425 P.3d 80, 87-88 (Alaska 2018); *see also Meier v. Cloud,* 34 P.3d 1274, 1279 (Alaska 2001) ("Because the child will no longer be able to spend equal time with each parent in . . . situations [where a parent relocates to another state], a court considering the child's need for continuity and stability in this context must examine not only the desirability of maintaining geographical continuity, but also the importance of maximizing relational stability.").

[23] *Mengisteab*, 425 P.3d at 87-88 (quoting *Moeller-Prokosch III,* 99 P.3d 531, 535 (Alaska 2004)).

often a function of parental attitude and not of geography."[24]  In assessing stability, "[c]onsideration should also be given to social and emotional factors such as . . . whether the child would be separated from siblings or family members if he was placed with one parent rather than another."[25]  If a court does not consider the effect on the child of living apart from the moving parent, it "raises some question whether the best interests analysis was based on the assumption that the separation would take place, as we require."[26]

Zachary argues that the superior court's best interests analysis was both clearly erroneous and an abuse of discretion because it failed to consider the impact of the child's Alaska relationships on his relational stability, did not give these relationships adequate weight, and did not consider the negative consequences of disrupting these relationships.  At trial Zachary testified about the many strong non-parental relationships that the child has in Alaska, most notably with Zachary's partner and her parents.  Zachary argues that these relationships are "emotional anchors in [the child's] life" and that the child does not have any comparable relationships in St. Louis.  Zachary's partner and her mother also testified about their close relationships with the child.  His partner testified that she has been in a relationship with Zachary for two and a half years — about half of the child's life — and viewed her relationship to the child as one of a "stepmom."

The superior court's findings show it did consider the child's significant relationships in Alaska, weighed these against his other significant relationships, and determined this factor favored neither parent.  The court recognized that the child was

---

[24]     *McQuade v. McQuade*, 901 P.2d 421, 426 (Alaska 1995) (quoting *Craig v. McBride*, 639 P.2d 303, 308 (Alaska 1982) (Rabinowitz, C.J., concurring)).

[25]     *Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996).

[26]     *Mengisteab*, 425 P.3d at 88.

equally close to each parent and that "separation from either of them is likely to be equally impactful." It considered the child's network of relationships in Alaska, including Zachary's partner and her family, and found them to be "significant." Notably the superior court stated that because there was "scant difference between these parents," it had to "give weight to [the child's] relational stability and support network in Alaska." These findings were supported by the record and were not clearly erroneous.

Likewise the superior court did not abuse its discretion when it determined that the child's need for relational stability did not favor custody with one parent over the other. Zachary argues that the court overemphasized the role of outdoor activities in his relationship with his son and failed to consider the emotional bond between the two. This is not the case. The superior court found that Zachary and Jennifer played an "equal role" in their son's life and that he is close to both. The court did not fail to consider the emotional bond between Zachary and the child, but it did find that, because the child was equally attached to both parents, the need to preserve the child's emotional bonds did not favor either parent.

Zachary challenges the superior court's findings that their son "has all the tools in place for resilience," will "likely form new relationships" in St. Louis, and will be able to preserve his relationships in Alaska even if he moves. Given the amount of testimony the superior court heard regarding the child's temperament, his relationships, and the support he receives from his parents and family, these findings were not clearly erroneous.

The court reasoned that the child likely would not lose his Alaska relationships if he spent summers and school vacations, rather than the school year, in Alaska. The court found primary custody with Jennifer and school breaks with Zachary would likely better sustain the child's relationships because it would allow Zachary and the child to engage in the types of activities they liked doing together. The court

balanced this against its finding that moving to St. Louis would make the child's relationship with his maternal side of the family easier to sustain based on both Jennifer and her mother's testimony that more frequent visits were likely.

Zachary analogizes to two custody relocation cases: *Rego v. Rego*[27] and *Rooney v. Rooney*.[28] Although these decisions show that in some cases the stability factor may be decisive, they do not compel the conclusion that it must always be decisive or that it should be in this case. As we pointed out in *Rego*, custody determinations are "based upon the facts and circumstances of each particular case."[29] Given the facts of this case, we cannot say it was an abuse of discretion for the superior court to conclude that neither outcome would be better for the child's relational stability.

### C. The Superior Court Did Not Err Or Abuse Its Discretion By Finding That Jennifer Had Greater Ability To Administratively Manage The Child's Life.

Zachary next argues that the superior court clearly erred by finding that Jennifer was better at "the administrative aspects of life" and abused its discretion by giving decisive weight to this finding. We are not persuaded by either argument.

The evidence before the superior court was not so one-sided that it was clear error for the superior court to find Jennifer was better at these tasks. The superior

---

[27] 259 P.3d 447, 460 (Alaska 2011) (explaining that, if court gives weight to relationships child has in the place where child has been living, it does not necessarily mean court has over-emphasized geographic stability at the expense of relational stability if the court was "more focused on [child's] relationships in the . . . community than the geographic location itself").

[28] 914 P.2d at 217 (holding that superior court did not abuse its discretion when it granted primary custody to the non-moving parent and relied heavily on relational stability in doing so, even though court had found that the love between child and both parents was equal).

[29] 259 P.3d at 456-57 (quoting *McQuade*, 901 P.2d at 425).

court heard nearly two days of oral testimony and was presented with numerous exhibits including screen shots of text exchanges between Jennifer and Zachary and screen shots from their family scheduling app. Jennifer gave extensive testimony about the tasks with which she helps their son and the quality of care she provides for him. Zachary testified that he also plays an active role in the more "administrative" side of caring for their son. After hearing and weighing the testimony of all the parties and the witnesses, the superior court found that Jennifer "tends to be more proactive about these administrative tasks that provide stability, consistency and routine, but that both parents are equally involved in those activities and decision-making." Looking at the evidence before the superior court, we are not left with "a definite and firm conviction" that this finding is mistaken.[30]

The superior court did not abuse its discretion when determining that it was in the child's best interests to grant primary custody to Jennifer. The superior court found "a very slight tip of the scale" toward Jennifer having custody during the school years because of her administrative management of their son's day-to-day life. The court stated "all other factors [were] equal." Due to Jennifer's administrative management skills, the court found it was in the child's best interests to move to St. Louis with Jennifer.

When both parents are loving, capable, and involved in the child's life, it is difficult for the court to determine which parent should have primary custody when one moves far away. The differences between the parents — at least insofar as the child's best interests are concerned — are minor. Yet because the court must

---

[30]     *Moeller-Prokosch III*, 99 P.3d 531, 534 (Alaska 2004).

nevertheless decide which parent will have primary custody, the court must often rely on these minor differences as decisive factors. It is not an abuse of discretion to do so.

In the same vein, when most best interests factors favor neither parent, a court does not abuse its discretion by giving decisive weight to a single factor that does favor one parent.[31] Finding one factor to be determinative does not automatically mean the superior court gave that factor disproportionate significance.[32] The superior court found both Jennifer and Zachary to be loving and capable parents who were nearly equal in every factor. The sole difference pertained to Jennifer's administrative abilities, which are related to her capability to meet the child's needs.[33] The superior court did not abuse its discretion by giving decisive weight to this factor when the parties were equal in all other respects.

## V. CONCLUSION

We AFFIRM the superior court's decision.

---

[31] *See Rooney*, 914 P.2d at 216.

[32] *See Evans v. Evans*, 869 P.2d 478, 482 (Alaska 1994) ("[T]he court did not give these [stability] factors disproportionate significance over other relevant factors; rather, it emphasized that they were determinative only because the parties were equally qualified to have custody of the children in all other respects.").

[33] *See* AS 25.24.150(c)(2) (requiring court to consider "the capability and desire of each parent to meet [the child's] needs").